UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM HENIG, on behalf of himself and
all others similarly situated,

                Plaintiff,

    -against-

QUINN EMANUEL URQUHART &
SULLIVAN, LLP and PROVIDUS NEW
YORK, LLC,

                Defendants.

13 CIV 1432 (RA)

**DEFENDANT QUINN EMANUEL URQUHART & SULLIVAN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(B)(6)**

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

Peter E. Calamari
Marc Greenwald
Shon Morgan, *pro hac vice*
Scott Commerson, *pro hac vice*

51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel:  212-849-7000
Facsimile:  212-849-7100

*Attorneys for Defendant Quinn Emanuel Urquhart & Sullivan, LLP*

April 26, 2013

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...........................................................................................................1

I.     FACTUAL BACKGROUND ..............................................................................3

II.    LEGAL ARGUMENT ........................................................................................4

       A.    The FLSA and NYLL Exempt Employees In A "Professional" Capacity
             From Overtime Requirements.................................................................4

       B.    Attorneys Performing Litigation-Related Document Review Are
             Performing Exempt Legal Work As A Matter of Law ...........................5

       C.    Document Review Inherently Involves Exercise Of Discretion And
             Judgment, And An Attorney's Failure To Do So Poses Severe
             Consequences..........................................................................................9

CONCLUSION.............................................................................................................11

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................4

*Berge Helene, Ltd. v. GE Oil & Gas, Inc.*,
No. H-08-2913, 2011 WL 798204 (S.D. Tex. March 1, 2011) ..............................10

*Branhaven, LLC v. Beeftek, Inc.*,
-- F.R.D. --, 2013 WL 388429, *6-7 (D. Md. Jan. 4, 2013) ..................................10

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)...............................................................................4

*Davis v. Rouse*,
No. WDQ-08-cv-3106, 2012 WL 3059569 (D. Md. July 25, 2012) ......................10

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
770 F. Supp. 2d 497 (E.D.N.Y. 2011) .................................................................4

*E.I. DuPont de Nemours and Co. v. Kolon Indust., Inc.*,
No. 3:09-cv-058, 2013 WL 458532 (E.D. Va. Feb. 6, 2013) .................................7

*In re Enron Securities, Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) .................................................................7

*Franklin v. Breton Intern., Inc.*,
No. 06 Civ. 4877, 2006 WL 3591949 (S.D.N.Y. Dec. 11, 2006)............................5

*Gabriel Tech. Corp. v. Qualcomm Inc.*,
No. 08-cv-1992, 2013 WL 410103 (S.D. Cal. Feb. 1, 2013)..................................6

*Harmony Gold U.S.A., Inc. v. FASA Corp.*,
169 F.R.D. 113 (N.D. Ill. 1996)..........................................................................11

*Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*,
No. 2:07-CV-116, 2012 WL 3731483 (S.D. Oh. Aug. 28, 2012)...........................11

*Kmart Corp. v. Foodstar, Inc.*,
No. 09-C-3607, 2010 WL 4512337 (N.D. Ill. Nov. 2, 2010) .................................11

*Merck Eprova AG v. Gnosis S.P.A.*,
No. 07-cv-5898, 2010 WL 1631519 (S.D.N.Y. April 20, 2010)...........................10

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) .............................................................................7

*In re NYSE Specialists Sec. Litig.*,
    503 F.3d 89 (2d Cir. 2007)............................................................................................4

*In re Orthopedic Bone Screw Prod. Liability Litig., No. MDL 1014*,
    1997 WL 805219 (E.D. Pa. 1997) ............................................................................10

*Peerless Indus. v. Crimson Av., LLC*,
    No. 1:11-CV-1768, 2013 WL 85378 (N.D. Ill. Jan. 8, 2013)..................................10

*Reiseck v. Universal Commc'ns of Miami, Inc.*,
    591 F.3d 101 (2d Cir. 2010)........................................................................................4

*In re Seroquel Products Liability Litig.*,
    244 F.R.D. 650 (M.D. Fla. 2007)..............................................................................10

*Shelton v. American Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ....................................................................................9

*Sporck v. Peil*,
    759 F.2d 312 (3d Cir.), *cert. denied*, 474 U.S. 903 (1985)......................................10

*T.P. ex. rel. Kimbreley R. v. City of Chicago Public School Dist. 299*,
    No. 10 C 2604  2011 WL 1197353 (N.D. Ill. Mar. 29, 2011) ...................................7

*Takeda Chem. Indust., Ltd. v. Mylan Laboratories, Inc.*,
    No. 03-cv-8253, 2007 WL 840368 (S.D.N.Y. Mar. 21, 2007) ...................................7

*Tampa Bay Water v. HDR Engineering Inc.*,
    No. 8:08-CV-2446, 2012 WL 5387830 (M.D. Fla. Nov. 2, 2012) ........................5, 7

*In re Tyco Intern., Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007)............................................................................6

*Wheeler v. Coss*,
    No. 3:06-cv-00717-RAM, 2010 WL 2628667 (D. Nev. June 28, 2010)......................7

<u>**Statutes**</u>

29 U.S.C. § 213(a)(1).....................................................................................................4

29 U.S.C. § 541.304(a)(1)..............................................................................................5

29 U.S.C. § 541.304(d) ..................................................................................................5

N.Y. Comp. Codes R & Regs., tit. 12 § 142-2.14(c)(4)(iii)(a) ..................................4, 5

Fed. R. Civ. Proc. 12(b)(6)  ..........................................................................................4

Fed. R. Civ. Proc. 23      ........................................................................................1, 3, 9

Fed. R. Civ. Proc. 37......................................................................................................10

**Introduction**

This suit is a misguided attempt to expand employee-protective wage and hour laws far beyond the bounds established by Congress and the New York state legislature.  Although many types of employees are entitled to enhanced pay for overtime, both federal and state law expressly exempt from overtime entitlement certain "professional" employees, including attorneys engaged in the practice of law.

Plaintiff Henig is a licensed New York bar member hired by co-defendant Providus and provided to Quinn Emanuel on a contract basis to review documents for a pending litigation.  Mr. Henig worked on the litigation project for only six weeks and was paid an hourly rate.  Mr. Henig now brings a purported FLSA collective action and class action under Rule 23, seeking overtime premiums when he exceeded 40 hours per week during his short assignment.  He does not allege he ever raised his exemption status while on the project contracted by Quinn Emanuel, nor that Providus failed to pay his regular wage for all hours worked.

This motion raises the discrete legal question whether licensed attorneys tasked with analyzing documents to determine relevance and privilege for pending litigation are engaged in the practice of law.  Common sense would indicate yes.  Overwhelming legal authority and decades of industry practice also confirm document review is a core attorney function, and refutes plaintiff's suggestion that application of the exemption turns on the fortuity of whether the documents being reviewed on a given day are "extremely routine" or instead involve subtle issues of judgment.  Although document review is sometimes perceived as a less glamorous litigation task, it is often of critical import.  Hence why Quinn Emanuel contracted for a licensed attorney rather than an out-of-work actor.  The centrality of document review to litigation

1

renders it indisputably legal work, and the legal nature of the task does not depend on what the reviewer happens to find.

Courts recognize the significance of document review in myriad ways.  The caselaw endorses an attorneys' selection and categorization of documents as protected work product precisely because it reflects attorney *judgment.*  Judges routinely award legal fees incurred for document review, and specifically approve the use of contract attorneys—who are generally less expensive than firm attorneys—for such legal work.  And the consequences when an attorney fails to exercise proper legal judgment in performing document review can be severe for both the attorney and his or her client, including sanctions, waiver of privilege, malpractice claims, and even dismissal of the client's case.  In short, document review has powerful legal repercussions because it is inherently legal work.  Plaintiff's standardless, "it depends on what I find" exemption test would render meaningless the bright lines that federal and state lawmakers enacted with the professional exemption to provide guidance to employers.

As an attorney performing document review for a pending litigation, plaintiff was exempt from New York and federal overtime requirements as a matter of law.  Quinn Emanuel respectfully requests that the action be dismissed for failure to state a claim.

Quinn Emanuel also notes that there is a substantial question as to whether it could be liable for any alleged violation of federal or state labor laws given that it was not plaintiff's employer.  Such claims would only sound against Providus, the temporary staffing agency that actually employed plaintiff.  However, the Court need not address that issue at this juncture because the law is settled that licensed attorneys such as plaintiff engaged in document review are exempt from overtime requirements.

## I.      **FACTUAL BACKGROUND**

Defendant Quinn Emanuel Urquhart & Sullivan is a law firm focused on business litigation.  Compl. ¶ 3.  Defendant Providus New York LLC is a staffing company that provides attorneys on a contract and direct-hire basis to law firms and corporate law departments in New York.  *Id.* ¶ 6.  Mr. Henig is a licensed attorney, *id.* ¶ 9, and member of the New York Bar.  Request for Judicial Notice ("RJN"), Exh. 1 (print-out from New York State Unified Court system showing plaintiff's New York bar registration number and year of admission).   He was hired by Providus on a temporary basis to review documents in connection with a pending litigation being prosecuted by Quinn Emanuel.  *Id.*   In this capacity, plaintiff viewed "hundreds of documents each day for the purpose of sorting the documents into certain categories identified by Defendants."  *Id.* ¶ 30.  He was allegedly "required to review documents under very specific guidelines set forth by Defendants and to sort the documents based on those guidelines."  *Id.* ¶ 31.  He contends he "routinely" worked 57 to 60 hours per week.  *Id.* ¶ 34.  Plaintiff received an hourly wage, and was paid at that regular hourly rate for hours he worked in excess of 40 per week.  *Id.* ¶ 33.  Mr. Henig was paid for all hours worked, and was engaged in the document review project for approximately six weeks.  *Id.* ¶ 9.  This brief six-week stint was the only work plaintiff performed that was outsourced by Quinn Emanuel.

Plaintiff purports to bring a collective action under the Fair Labor Standards Act "on behalf all individuals employed by Defendants for the purpose of reviewing documents on or after that date that is three years before the filing of the Complaint . . . who were paid an hourly wage and worked over 40 hours in a week."  *Id.* ¶ 14.   He also purports to bring a class action under Rule 23.  *Id.* ¶ 17.

## II.    LEGAL ARGUMENT

Under the familiar Rule 12(b)(6) standard, the Court accepts the complaint's factual allegations as true and draws all *reasonable* inferences in the plaintiff's favor.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  The Court need not accept as true, however, "legal conclusions, deductions or opinions couched as factual allegations."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell*, 550 U.S. at 555.

### A.    The FLSA and NYLL Exempt Employees In A "Professional" Capacity From Overtime Requirements

Mr. Henig claims he is owed overtime pursuant to the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Because NYLL employs similar standards and relies on the FLSA, such claims are often analyzed together.  *See Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010) ("The NYLL, too, mandates overtime pay and applies the same exemptions as the FLSA."); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 510 n.5 (E.D.N.Y. 2011).

The FLSA and NYLL both provide exemptions from overtime requirements for employees employed in "a bona fide . . . professional capacity . . . ."  (29 U.S.C. § 213(a)(1); N.Y. Comp. Codes R & Regs., tit. 12 § 142-2.14(c)(4)(iii)(a).)  Under rules promulgated by the Secretary of Labor pursuant to the FLSA, attorneys engaged in the practice of law are exempt "professional" employees:

> The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act also shall mean: (1) Any employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and is actually engaged in the practice thereof[.]

29 U.S.C. § 541.304(a)(1).  The definition of "professional" employees under the New York regulation "closely tracks" the federal regulation.  *See, e.g., Franklin v. Breton Intern., Inc.,* No. 06 Civ. 4877, 2006 WL 3591949, *4 (S.D.N.Y. Dec. 11, 2006) (discussing professional exemption as applied to teachers).[1]  Attorneys engaged in the practice of law need not be paid on a salary basis to qualify for the exemption.  29 U.S.C. § 541.304(d).

### B.   Attorneys Performing Litigation-Related Document Review Are Performing Exempt Legal Work As A Matter of Law

An attorney hired to analyze documents for the purpose of litigation is practicing law, and, consequently, is exempt under both the FLSA and NYLL.  Document review is a staple of legal practice and is particularly critical for large-scale litigations.  Documents must be analyzed to assess, among other things, responsiveness to discovery requests and/or subpoenas; relevance to designated issues or topics; potential attorney-client privilege or work product issues; confidentiality concerns; and myriad other issues.  *E.g., Tampa Bay Water v. HDR Engineering Inc.*, No. 8:08-CV-2446, 2012 WL 5387830, *16 (M.D. Fla. Nov. 2, 2012) (awarding attorneys'

---

[1]   The criteria for determining whether an individual is employed in a bona fide professional capacity under the NYLL are set forth at 12 NYR §142-2.14 (4)(iii):

> (iii) Professional. Work in a bona fide ... professional capacity means work by an individual: (a) whose primary duty consists of the performance of work: requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study . . .; and (b) whose work requires the consistent exercise of discretion and judgment in its performance; or (c) whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical or physical work) and is of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

fees and holding it was reasonable for party to use contract attorneys to conduct "thorough review of the documents for privilege, responsiveness and substantive issues").

Courts routinely grant requests for attorneys' fees based on time billed by contract attorneys for performing document review, which demonstrates judicial acknowledgement that the task constitutes "legal work." For example, in *In re Tyco Intern., Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249 (D.N.H. 2007), the parties to a securities fraud class action sought approval of a settlement that created a common fund and called for attorneys' fees representing 14.5% of the recovery. An objector claimed that the fees request was too high, arguing that fees incurred for document review performed by contract attorneys should not have been included in the lodestar calculation, but rather treated as a reimbursable expense. *Id.* at 272. The court rejected this argument:

> *An attorney, regardless of whether she is an associate with steady employment or a contract attorney whose jobs ends upon completion of a particular document review project, is still an attorney.* It is therefore appropriate to bill a contract attorney's time at market rates and count these time charges toward the lodestar. *Id.* (emphasis added).

Similarly, a court in the Southern District of California recently awarded more than $391,000 in attorneys' fees for document review performed by contract attorneys, noting that such fees "would have undoubtedly been exponentially higher" if the document review had been performed by attorneys overseeing the litigation rather than the less-expensive contract attorneys. *Gabriel Tech. Corp. v. Qualcomm Inc.*, No. 08-cv-1992, 2013 WL 410103, *10 (S.D. Cal. Feb. 1, 2013). Numerous other courts have awarded legal fees incurred for document review by

contract attorneys.[2] *See Takeda Chem. Indust., Ltd. v. Mylan Laboratories, Inc.*, No. 03-cv-8253, 2007 WL 840368, *7 (S.D.N.Y. Mar. 21, 2007) (Cote, J.) ("In complex litigation, contract attorneys are routinely used by well-established law firms who supervise their work.")

In *T.P. ex. rel. Kimbreley R. v. City of Chicago Public School Dist. 299*, No. 10 C 2604, 2011 WL 1197353 (N.D. Ill. Mar. 29, 2011), the plaintiff sought to recover statutory attorney fees as the prevailing party in an administrative proceeding.  The defendant argued that the plaintiff could not recover attorneys' fees incurred for document review because such work could have been delegated to non-professional employees.  The court rejected this argument:

This court agrees with Plaintiff that, in light of their general complexity and overall importance to litigation, document review and the compilation of financial data for purposes of a fee request are activities appropriately considered 'legal work.'  *Id.* at *6.

*See also Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008) (finding that district court erred in reducing fees for time spent by lead counsel performing document review); *Wheeler v. Coss*, No. 3:06-cv-00717-RAM, 2010 WL 2628667, *7 (D. Nev. June 28, 2010) (granting plaintiff's fee request for time spent "reviewing documents," among other tasks, and agreeing with plaintiff that it "would be inappropriate" for attorneys to delegate such work to a secretary or paralegal).

---

[2]  *E.g., E.I. DuPont de Nemours and Co. v. Kolon Indust., Inc.*, No. 3:09-cv-058, 2013 WL 458532, *6 (E.D. Va. Feb. 6, 2013) (approving award of $973,698.42 for document review performed by contract attorneys); *Tampa Bay Water*, 2012 WL 5387830, *16 (awarding attorneys' fees and noting that "[w]hile the contract attorneys' fees are not insubstantial, it was certainly reasonable for HDR to utilize these individuals to conduct an adequate review of the massive volume of documents[.]"); *In re Enron Securities, Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 785 (S.D. Tex. 2008) (prevailing party can recover fees for contract attorneys' services at market rates).

In 2005, the District of Columbia Court of Appeals Committee on Unauthorized Practice of Law issued an opinion addressing the question whether a contract attorney conducting document review in the jurisdiction was engaged in the practice of law, and thus, required admittance to the D.C. Bar.  RJN, Exh. 2.  The committee held that such attorneys were engaged in the practice of law, thus requiring admittance, even though the type of first-level document review performed by contract attorneys might be characterized by some as "paralegal work."  *Id.* at 5.  The committee noted:

> *When a person is hired and billed as a lawyer, however, the person is generally engaged in the practice of law*, and is certainly being held out as authorized or competent to practice law.  Clients would reasonably assume that the person held out as a contract lawyer performs functions that are different in degree, if not in kind, from those performed by paralegals or law clerks, and that the cost of services performed by contract lawyers reflects the legal training and judgment that they bring to the work they perform . . .

> In addition, if a contract lawyer is supervised not as a paralegal or law clerk but as a subordinate attorney would be supervised, the contract lawyer is engaged in the practice of law.  *The fact that both paralegals and subordinate attorneys may perform similar tasks under similar supervision does not mean that subordinate attorneys are not engaged in the practice of law.*  D.C. Bar members have a duty to supervise not only non-lawyers but lawyers who work under their direction, *and lawyers bring greater legal training and judgment to bear on certain tasks that may also be performed by paralegals subject to the type of supervision appropriate for paralegals.*

RJN, Exh. 2 at 5-6 (emphasis added).

In interpreting the NYLL's exemption for professional employees, the New York State Department of Labor gave the example of a "licensed attorney who chooses to work as a cook in a restaurant rather than practicing law" as someone who would not be covered by the exemption. RJN, Exh. 3 at p. 2.

It cannot reasonably be disputed that licensed attorneys such as plaintiff who are hired to perform document review in the context of pending litigation are engaged in the "practice of law," and thus are exempt from the FLSA and NYLL's overtime requirements as a matter of law.

**C.      Document Review Inherently Involves Exercise Of Discretion And Judgment, And An Attorney's Failure To Do So Poses Severe Consequences**

Plaintiff's only response to the authorities, as well as common sense, is to characterize the document review he performed as "extremely routine" and constrained by "very specific guidelines[.]"  Compl. ¶ 32.[3]  However, the fact that attorneys are required to follow guidelines to ensure quality and consistency for a particular project does not alter the *legal* nature of the task being performed, nor does it eliminate the need for attorneys to exercise their legal training and judgment in assessing the documents.[4]  Attorneys conducting such review are bound by the same ethical rules governing all lawyers and must abide by the professional standards that govern legal work.

In addition, courts consistently recognize the import of document review by protecting an attorney's analysis and categorization of documents as opinion work product, precisely because such tasks reflect the attorneys' thought processes and theories regarding the litigation.  *See, e.g., Shelton v. American Motors Corp.,* 805 F.2d 1323, 1329 (8th Cir. 1986) ("In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research....We believe [counsel's] selective review of

---

[3] Although unnecessary to resolve this motion, the matters on which Mr. Henig worked were fourteen suits in which Quinn Emanuel represents the Federal Housing Finance Agency, which seeks to recover damages based on billions of dollars of mortgage-backed securities improperly sold to Fannie Mae and Freddie Mac.  These actions are among the most sophisticated, largest litigations currently pending in the United States, and no aspect of the cases can fairly be characterized as "routine."

[4]  It is also facially apparent that collective action status under the FLSA or certification under Rule 23 cannot be granted.  Plaintiff does not contend that all Quinn Emanuel contract attorneys in New York are necessarily misclassified.  Rather, even under plaintiff's (incorrect) theory, that determination turns on whether a given day's work involved discretion or judgment as opposed to tasks plaintiff characterizes as more "routine."  Plaintiff's proposed standard is unsupportable, but in any event it could not apply uniformly to all work, or even all document review work, performed by contract attorneys, and thus common issues could not possibly predominate.

[her clients'] numerous documents was based on her professional judgment of the issues and defenses involved in this case."); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir.) ("We believe that the selection and compilation of documents in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product."), *cert. denied*, 474 U.S. 903 (1985).

Finally, an attorney's failure to exercise appropriate diligence and judgment in reviewing and producing documents can result in severe penalties, both for the attorney and his or her client. *See* Fed. R. Civ. Proc. 37 (a party that fails to respond to a discovery request "may be fined, have its evidence prevented from being admitted, or have its claim dismissed partially or entirely."); *e.g., Merck Eprova AG v. Gnosis S.P.A.*, No. 07-cv-5898, 2010 WL 1631519, *3-6 (S.D.N.Y. April 20, 2010) (issuing sanction against party and attorneys for failing to produce responsive documents); *Branhaven, LLC v. Beeftek, Inc.*, -- F.R.D. --, 2013 WL 388429, *6-7 (D. Md. Jan. 4, 2013) (awarding sanctions against client and counsel for producing documents in an unusable form and manner); *Berge Helene, Ltd. v. GE Oil & Gas, Inc.*, No. H-08-2913, 2011 WL 798204, *5 (S.D. Tex. March 1, 2011) (defendant sanctioned for late production of documents); *Davis v. Rouse*, No. WDQ–08–cv–3106, 2012 WL 3059569, *2 (D. Md. July 25, 2012) (awarding monetary sanctions against party that produced large number of nonresponsive documents); *In re Seroquel Products Liability Litig.*, 244 F.R.D. 650, 665 (M.D. Fla. 2007) (finding that sanctions were warranted for party's failure to produce "usable" or "reasonably accessible" documents.); *In re Orthopedic Bone Screw Prod. Liability Litig.*, No. MDL 1014, 1997 WL 805219, *5-6 (E.D. Pa. 1997) (imposing sanctions for defendants' delayed production); *Peerless Indus. v. Crimson Av., LLC,* No. 1:11–CV–1768, 2013 WL 85378, *4 (N.D. Ill. Jan. 8, 2013) (granting sanctions for discovery violations and noting that "[d]efendants

cannot place the burden of compliance on an outside vendor and have no knowledge, or claim no control, over the process").

In addition to the risk of sanctions, an attorney's failure to exercise proper judgment and discretion in reviewing documents can result in the inadvertent production of privileged or work product materials, and a finding that the client has waived attorney-client privilege.  *E.g., Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-CV-116, 2012 WL 3731483, *4-6 (S.D. Oh. Aug. 28, 2012) (waiver found where 347 privileged documents were produced and the party failed to demonstrate that it had taken reasonable precautions to prevent disclosure); *Kmart Corp. v. Foodstar, Inc.*, No. 09-C-3607, 2010 WL 4512337, *4 (N.D. Ill. Nov. 2, 2010) (party could not clawback privileged documents where its counsel failed to show that reasonable steps had been taken to prevent disclosure); *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996) ("It is axiomatic that a screening procedure that fails to detect confidential documents that are actually listed as privileged is patently inadequate."). The inadvertent production of privileged documents can also lead to malpractice claims against law firms who allegedly failed to oversee the document review performed by outsourced contract attorneys.  *See, e.g.,* RJN, Exh. 4 at pp. 8-9 (pending malpractice complaint against law firm alleging failure to properly oversee contract attorneys that resulted in production of allegedly privileged information.)

As an attorney who was hired to conduct document review for a pending litigation, plaintiff is exempt from the FLSA's and NYLL's overtime requirements as a matter of law.

## Conclusion

For the foregoing reasons, defendant Quinn Emanuel respectfully requests that the Court dismiss the Complaint with prejudice.

DATED: New York, New York
      April 26, 2013

                  Respectfully submitted,

                  QUINN EMANUEL URQUHART &
                  SULLIVAN, LLP

                  By */s/ Peter E. Calamari*
                     Peter E. Calamari
                     (petercalamari@quinnemanuel.com)
                     Marc Greenwald
                     (marcgreenwald@quinnemanuel.com)
                     Shon Morgan, *pro hac vice*
                     (shonmorgan@quinnemanuel.com)
                     Scott Commerson, *pro hac vice*
                     (scottcommerson@quinnemanuel.com)
                     51 Madison Avenue, 22nd Floor
                     New York, New York 10010
                     (212) 849-7000
                     *Attorneys for Defendant Quinn Emanuel*
                     *Urquhart & Sullivan, LLP*