# EXHIBIT 4

"

1 Rafael Bernardino, Jr.        SBN 118690
  Stanley L. Friedman         SBN 120551
2 HOBSON BERNARDINO + DAVIS LLP
  333 South Hope Street, Suite 4000
3 Los Angeles, California 90071
  Telephone: (213) 406-2958
4
  Attorneys for Plaintiff
5 J-M MANUFACTURING COMPANY, INC.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUN 25 2012

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
       Mary Flores

6

7

8

9 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10 **COUNTY OF LOS ANGELES - STANLEY MOSK COURTHOUSE**

11

| | |
|---|---|
| J-M MANUFACTURING COMPANY, INC., a Delaware Corporation, | Case No. BC 462 832 |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR DAMAGES** |
| vs. | **[1] LEGAL MALPRACTICE**<br>**[2] BREACH OF FIDUCIARY DUTY** |
| MCDERMOTT WILL & EMERY, a Business Entity, form unknown; and DOES 1 through 100, inclusive, | **[3] ACCOUNTING**<br>**[4] NEGLIGENCE** |
| Defendants. | Dept. 33 |
| | [Assigned to the Honorable Charles F. Palmer for All Purposes] |

21   ***COMES NOW,*** plaintiff  J-M MANUFACTURING COMPANY, INC., a Delaware

22 Corporation doing business as JM Eagle ("JME" or "PLAINTIFF"), complaining of defendants

23 MCDERMOTT WILL & EMERY, a business entity, form unknown ("MWE" or "McDermott"),

24 NAVIGANT CONSULTING, INC., a Delaware Corporation ("Navigant") formerly DOE 1,

25 STRATIFY, INC., a business entity, form unknown ("Stratify") formerly DOE 2, and DOES 3

26 through 100, inclusive, and each of them, (collectively referred to herein as "DEFENDANTS")

27 as follows:

28

## I.   INTRODUCTION.

1.    The malpractice alleged in this matter relates to, *inter alia*, two productions of approximately 3,900 of JME's attorney-client privileged and attorney work product documents by McDermott.  This epic failure of McDermott's handling of the e-Discovery process, and failure of supervision of JME's e-Discovery vendors Navigant and Stratify, occurred in a high profile, multi-million dollar, "bet–the–company" *Qui Tam* litigation pending in the United States District Court for the Central District of California in Case No. ED CV 06-55-GW (the "case within a case" herein).

2.    Many of the privileged documents are emblazoned with the header "***Attorney Client Privilege***," such as to arrest the attention of even the most calloused e-Discovery attorney, yet the privileged documents were produced by McDermott in the *Qui Tam* Action **twice**, to the great prejudice and damage of JME which has **already** incurred damages in excess of $350,000.00 litigating a protracted and complex "clawback" motion.

3.    Indeed, damages are **not only** the substantial attorneys' fees and costs incurred by JME in the "clawback motion," but **also** any damages JME sustains in the *Qui Tam* Action.   Any judgment against JME in that matter is the direct and proximate result of defendants' legal malpractice, breach of fiduciary and (as for Navigant and Stratify)  negligence that literally **handed** such a significant volume of sensitive and privileged documents to adversaries.

4.    Further, McDermott – in violation of the California *Rules of Professional Conduct* – wilfully hampered JME's efforts to secure the return of privileged documents, all because McDermott's legal fees were purportedly unpaid.  McDermott also failed to implement a clawback agreement in the *Qui Tam* Action, rendering the return of the privileged documents that much more complex and costly.

5.    In addition to the damages outlined above, Plaintiff seeks punitive damages for McDermott's refusal, in violation of the applicable California *Rule of Professional Conduct*, to return JME's client files until August 2011 based on a fee dispute, which refusal directly prejudiced JME by denying it essential facts attendant to the extent of the disclosure of its

SECOND AMENDED COMPLAINT FOR DAMAGES

1  privileged documents.  This improper and unethical delay hampered JME in the *Qui Tam* matter

2  and increased the complexity and cost of the clawback motion.

3

4  **II.     PARTIES AND VENUE.**

5          6.      PLAINTIFF JME is now, and at all times herein was, a Delaware Corporation, in

6  good standing and licensed to do business in Los Angeles County, California.  JME's corporate

7  headquarters is in the County of Los Angeles, City of Los Angeles.  The factual events set forth

8  herein occurred within Los Angeles County, State of California; accordingly, venue is proper in

9  the above-entitled court.

10         7.      Defendant McDermott is now, and at all times herein was, a business entity, form

11  unknown.  PLAINTIFF is informed and believes and thereon alleges that this defendant resides in

12  Los Angeles County, California, and has been doing business in Los Angeles County, California.

13         8.      Defendant Navigant, formerly DOE 1, is now, and at all times herein was, a

14  Delaware Corporation, in good standing and licensed to do business in Los Angeles County,

15  California.  PLAINTIFF is informed and believes and thereon alleges that this defendant resides

16  in Los Angeles County, California, and has been doing business in Los Angeles County,

17  California.  Navigant holds itself out as a specialized independent consulting firm providing

18  dispute, financial regulatory and operational advisory services to government agencies, legal

19  counsel and large companies facing uncertainty, risk, distress and significant change.

20         9.      Defendant Stratify, formerly DOE 2, is now, and at all times herein was, a

21  subsidiary of Iron Mountain Incorporated, a Delaware Corporation.  Stratify is headquartered in

22  Mountain View, California.  PLAINTIFF is informed and believes and thereon alleges that

23  Stratify is licensed to do business in Los Angeles County, California, and that this defendant

24  resides in Los Angeles County, California, and has been doing business in Los Angeles County,

25  California.

26         10.     The true names or capacities, whether individual, corporate, associate, or otherwise

27  of defendants named in this action as Does 3-100 ("DOES") are unknown to PLAINTIFF, who

28  therefore sues such defendants by such fictitious names.  PLAINTIFF will seek leave of this

SECOND AMENDED COMPLAINT FOR DAMAGES

1  Honorable Court to amend this Complaint when the true names and/or capacities of said

2  defendants have been ascertained.  Said fictitiously named defendants are in some manner

3  proximately responsible for the damages suffered by PLAINTIFF herein.

4

5  **III.   AGENCY ALLEGATIONS**

6  11.   Each of the defendants, including the fictitiously named DOE defendants, was the

7  agent, or employee, partner or officer, director or joint venturer of defendants herein, and in doing

8  the things herein alleged acted within the course and scope of said agency, employment,

9  partnership, joint venture, or association and under the direction of, and with the consent and

10  permission, advance knowledge and/or ratification of the other defendants.

11  12.   At all times relevant herein, defendants, including the fictitiously named DOE

12  defendants, and each of them, formed and operated under a common plan and agreement, with the

13  resulting injuries and damages to PLAINTIFF arising from acts done in furtherance of the

14  common design.

15

16  **IV.   VENUE**

17  13.   Venue is proper in Los Angeles County pursuant to California *Code of Civil*

18  *Procedure* section 395(a) because PLAINTIFF entered into a contract with defendants in Los

19  Angeles County; and because defendants were to perform legal services for PLAINTIFF herein in

20  "the *Underlying Action.*"

21

22  **V.   GENERAL ALLEGATIONS**

23  ___A.   "The Case Within The Case."___

24  14.   JME retained McDermott, which held itself out as knowledgeable in the area of

25  Qui Tam actions and e-discovery, to represent it regarding subpoenas received in 2006 and 2007

26  from the federal, California, and Tennessee governments which called for production of copies of

27  paper documents as well as electronic documents.  The subpoenas sought information regarding

28  the False Claims Act allegations made in the case of *United States ex rel. Hendrix v. J-M*

4

SECOND AMENDED COMPLAINT FOR DAMAGES

1   *Manufacturing Co.*, which was then a non-public complaint filed under seal.  Each of the

2   subpoenas required JME to produce paper and electronic documents.  During the course of its

3   representation of JME, McDermott billed JME on an hourly basis and at rates as high as $925.00

4   per hour.

5          15.     McDermott then worked with JME to identify approximately 160 JME custodians

6   of potentially responsive electronically stored information ("ESI").

7

8          ***B.     The E-Discovery Vendors Negligently Failed to Identify JME's Privileged***

9          ***Documents.***

10         16.     McDermott, working with third-party electronic discovery ("e-Discovery") vendors

11  Navigant and Stratify, copied the custodians' ESI from desktop computers and other electronic

12  devices such as phones, and transferred it to the proprietary databases of Navigant and/or Stratify

13  to host the ESI and run search terms.  JME is informed and believes and thereon alleges that

14  McDermott entered into contractual relationships with both Navigant and Stratify, wherein

15  McDermott was deemed the client and Stratify and Navigant were deemed the vendors.  JME is

16  informed and believes and thereon alleges that it was required to pay Stratify and Navigant, and as

17  such was, at a minimum a third party beneficiary of the contracts between Stratify and Navigant

18  on the one hand and McDermott on the other hand.

19         17.     JME is informed and believes, and based thereon alleges, that Navigant and

20  Stratify, at all times relevant hereto, had a formalized strategic partnership to provide law firms

21  and legal departments with an end–to–end e-Discovery solutions for early case assessment and

22  high–productivity review.

23         18.     Navigant and Stratify claimed that Navigant's e-Discovery project management

24  expertise, combined with Stratify's dynamic e-Discovery solution, would offer major corporations

25  and their legal counsel powerful and cost effective capabilities for fast and accurate document

26  reviews in response to regulatory investigations and litigation.

27         19.     JME is informed and believes, and based thereon alleges, that Navigant and

28  Stratify further claimed that a key element of their "end–to–end" service would be the integration

5

SECOND AMENDED COMPLAINT FOR DAMAGES

1   of Navigant's "Discovery Portal" and the "Stratify Legal Discovery Service." Law firm clients of

2   Navigant and Stratify, purportedly, would be able to access project information from the earliest

3   preservation and collection efforts to the processing reports and review metrics, and manage same

4   "from one convenient and central location."

5        20.   The search term filter, containing keywords, was negotiated with the federal

6   government and contained terms designed to produce documents relevant to the federal

7   government and state subpoenas. Additionally, Navigant and Stratify were supposed to run a

8   privilege filter through the collected documents in order to separate out privileged documents,

9   including attorney-client privileged documents.

10       21.   The search process concerning privileged documents, however, did not run

11  correctly. JME is informed and believes, and based thereon alleges, that on or about July 26,

12  2007, the California Department of Justice requested documents in native file format, as well as

13  certain metadata fields (such as date/time received and date/time opened).

14       22.   Immediately thereafter, and in support of formulating a response thereto, on or

15  about July 27, 2007, McDermott attorney Jessica Cullen Smith wrote to James L. Sanders and

16  Lisa A. Linsky, also McDermott attorneys:

17             We are continuing to look at our options with respect to their
               request that we do a native production on certain types of files. **It**
18             **represents some real difficulty as we cannot filter some parts of**
               **those files using our privilege filter**. Navigant and Dave Skowron
19             are trying to develop our options.

20  (Emphasis added.) This text was highlighted in Ms. Linsky's hard copy "*Qui Tam* Action

21  Working File" with the handwritten notation, in red ink: "IMPT* Priv Filter Limitation".

22       23.   JME is informed and believes, and based thereon alleges, that Navigant and/or

23  Stratify were the e-Discovery vendors responsible for JME's production of documents in

24  electronic form to the federal government shortly after Jessica Cullen Smith's July 27, 2007 e-

25  mail, in or about August 2007. The "real difficulty" concerning the "Priv Filter Limitation"

26  described by McDermott attorney Lisa A. Linskey was not resolved because the August 2007

27  production was rife with JME's sensitive and attorney-client privileged documents.

28

SECOND AMENDED COMPLAINT FOR DAMAGES

24.     JME is informed and believes, and based thereon alleges that Iron Mountain Incorporated and Stratify announced the signing of a merger agreement on or about October 31, 2007.

25.     JME is informed and believes, and based thereon alleges, that, wholly in addition to their failure to search and filter adequately the documents known **not** to be covered by the privilege filter (such as documents or portions thereof without extractable text), Navigant and Stratify **also** failed to properly index the database(s) containing JME's electronically stored information (ESI), including metadata fields.  The indexing process is crucial as information is added to the database (*i.e.* ESI from custodians) and it must be updated properly, and on an ongoing basis.  An indexing failure means data will not be identified (extracted) from source documents, and, consequently, source documents will not show up in search results (such as for keywords, like "Attorney w/3 Privilege!").  This function is, quite evidently, crucial when culling presumptively privileged material from the general population of documents.

26.     Plaintiff is informed and believes, and based thereon alleges, that at least one e-mail communication from a McDermott attorney asks Navigant and/or Stratify why a search term manually typed into the search field "letter by letter" produced different search results than when the same search term was entered whole via "copy and paste."  Such discrepancies indicate the **database was not being indexed adequately** or in accordance with industry standards and, as such, did not yield accurate or complete search results.  This should have put any reasonably diligent e-Discovery vendor on notice that search results were materially **defective and incomplete** due to inadequate indexing.

27.     Due to this ongoing indexing failure, data identifying certain documents as presumptively privileged was **not** extracted from the source documents.  This was true for JME's production of documents in electronic form to the federal government in or about August 2007, **and also** for the replacement set, produced to the federal government on or about July 18, 2008. It is presently unknown to JME what further review was conducted by McDermott, Navigant and/or Stratify after being informed of the defects of the August 2007 production.  Both productions (August 2007, July 2008) contained the same (or substantially the same)

7

1   approximately 3,900 privileged JME documents.  This repeated failure occurred even though

2   McDermott, Navigant and Stratify were on notice that the August 2007 production was defective

3   insofar as it contained thousands of privileged documents.

4          28.     As the two defective productions prove, at a minimum, Navigant and Stratify

5   maintained an **ineffective privilege filter** (or, alternatively, did not run a privilege filter) for ESI

6   collected from JME's custodians.  Their e-Discovery systems failed materially – and twice – and

7   even after notice of their substantive failure concerning the August 2007 production.  The direct

8   and proximate result, due to the repeated negligent and careless failures of McDermott, Navigant

9   and Stratify, was that JME's privileged documents (many with the words "Attorney-Client

10  Privileged" emblazoned prominently thereon) were: (1) not identified by the privilege filter; (2)

11  not categorized as "presumptively privileged;" and, consequently, (3) dumped unnoticed into the

12  general document population (*i.e.* non-presumptively privileged) in line for production to JME's

13  adversaries in the "case within the case," the *Qui Tam* Action.

14

15         *C.*      ***McDermott Produced Approximately 3,900 of JME's Privileged Documents.***

16         29.     McDermott then produced documents containing the keywords to the federal

17  government; however, in addition to responsive documents, McDermott produced to the federal

18  government documents that were not responsive to the subpoenas and were also attorney-client

19  privileged.  In response to the disclosure of attorney-client privileged documents to it, the federal

20  government requested McDermott to conduct a further privilege review and then re-submit a new

21  production to it.  It is presently unknown to JME what further review was conducted by

22  McDermott, Navigant and/or Stratify, if any, and a second production was sent to the federal

23  government, which, in turn, disclosed this production to the real parties in interest (the

24  "Relators").  As in the first production, during the second production, McDermott turned over

25  attorney-client information, and other privileged documents, which was also non-responsive to the

26  subpoenas.  In May and June of 2011, JME through its new counsel, discovered that

27  approximately 3,900 privileged and non-responsive documents were turned over to the federal

28

SECOND AMENDED COMPLAINT FOR DAMAGES

1   government in the second production, and it was these documents which were then, in turn,

2   disclosed to Relators.

3        30.    Prior to the second production of privileged documents to the federal government,

4   McDermott retained Hudson Global Resources ("Hudson") which provided contract lawyers in

5   the New York area at the rate of $61.00 an hour to review documents that were identified as

6   potentially privileged and to divide them into three categories: responsive but privileged;

7   responsive and not privileged; and, non-responsive.  McDermott's lawyers participated in the

8   hiring of Hudson's contract lawyers and also assisted in their training.  The contract lawyers

9   negligently performed their duties, and McDermott's lawyers, in turn, negligently performed

10  limited spot-checking of the contract attorneys' work.  The combined efforts of the contract

11  lawyers, and the McDermott lawyers who supervised them, fell below the applicable standard of

12  care for lawyers because McDermott did not properly supervise the contract lawyers and failed to

13  thoroughly review the documents that they reviewed to determine whether any or a large number

14  of privileged documents were being disclosed.

15       31.    Further, McDermott failed to properly supervise Navigant and Stratify, and failed

16  to check the work of these e-Discovery vendors, and materially so, given the volume of privileged

17  material disclosed not on one, but two occasions – the second such disclosure coming when

18  McDermott was well aware that the first production was materially deficient insofar as it included

19  thousands of privileged documents.  Navigant and Stratify maintained an **ineffective privilege**

20  **filter** (or, alternatively, did not run a privilege filter) for ESI collected from JME's custodians.

21  Navigant and Stratify's e-Discovery systems failed materially – and twice – and even after notice

22  of their substantive failure concerning the August 2007 production.  The direct and proximate

23  result (due to the repeated negligent and careless failures of Navigant and Stratify and

24  McDermott's negligent supervision of Navigant and Stratify) was that JME's privileged

25  documents (many with the words "Attorney-Client Privileged" emblazoned prominently thereon)

26  were: (1) not identified by the privilege filter; (2) not categorized as "presumptively privileged;"

27  and, consequently, (3) dumped unnoticed into the general document population (*i.e.* non-

28

9

SECOND AMENDED COMPLAINT FOR DAMAGES

1  presumptively privileged) in line for production to JME's adversaries in the "case within the

2  case," the *Qui Tam* Action.

3       32.    About 250,000 electronic documents were produced to the governmental entities,

4  including many based on Hudson's assessment of responsiveness and privilege; and included in

5  the second production were approximately 3,900 privileged documents.  Although the federal

6  government declined to intervene in *United States ex rel. Hendrix v. J-M Manufacturing Co.*, the

7  documents produced by McDermott were nonetheless turned over to the counsel for the Relators

8  in that case.

9       33.    In March 2010, JME retained the law firm of Sheppard Mullin Richter &

10  Hampton, LLP ("Sheppard") to replace McDermott.   In or about June 2010, counsel for the

11  Relators informed Sheppard that it had received JME's document production from the federal

12  government.  Like the predecessor United States Attorney's Office, which represented the federal

13  government, Relators' counsel discovered that clearly privileged documents were contained in

14  McDermott's production of documents.  However, unlike the predecessor United States

15  Attorney's Office, which immediately returned the privileged documents to McDermott, counsel

16  for the Realtor did not immediately return the privileged documents to JME.   Thereafter,

17  Sheppard asked Relators' counsel to destroy or return the privileged documents.  Relators'

18  counsel refused, alleging that JME waived the attorney-client privilege with respect to the subject

19  matter of the documents because McDermott twice conducted privilege reviews before producing

20  the documents to the federal government.  JME is informed and believes and thereon alleges that

21  approximately 3,900 privileged documents were produced by McDermott without JME's

22  informed consent and that such 3,900 documents should not have been produced by McDermott.

23       34.    On March 15, 2010, McDermott was substituted out of the case of *United States ex*

24  *rel. Hendrix v. J-M Manufacturing Co*.  McDermott, however, notwithstanding its substitution out

25  of the case, continued to provide substantive and extensive legal services to JME in regard to

26  *United States ex rel. Hendrix v. J-M Manufacturing Co*.  Specifically, McDermott invoice number

27  2121112 (dated May 24, 2010) records three pages of time entries by McDermott attorneys dated

28  April 1, 2010 through April 21, 2010.  The legal fees are almost $20,000 "For Services Rendered

10

SECOND AMENDED COMPLAINT FOR DAMAGES

in Connection with: Matter 0011 *Qui Tam* Action." Further, McDermott invoice number

2149264, dated July 28, 2010, records time entries by senior McDermott attorneys B. Roker and J.

Rubinstein dated June 8, 2010 through June 24, 2010. Likewise, this was "For Services Rendered

in Connection with: Matter 0011 *Qui Tam* Action." On this invoice alone, over seven hours were

expended by McDermott for almost $6,000 in attorney fees -- plus such substantive costs as

"Computer Assisted Research" and "Telecommunications." Indeed – as a further and specific

example of this ongoing legal representation of JME by McDermott concerning the *Qui Tam*

Action – on June 16, 2010, and again June 23, 2010, over four hours were expended by senior

McDermott attorney J. Rubinstein (then billing rate: $825.00 per hour) concerning "production of

documents in 2008." The production of documents in 2008 in the *Qui Tam* Action is central to

this malpractice action, and senior McDermott attorneys provided JME with (**and also billed for**)

substantive legal advice on this precise topic as late as June 24, 2010.

### D.   McDermott's Unethical Refusal to Turn Over JME's File.

35.   After March 15, 2010, and in violation of California *Rule of Professional Conduct*

3-700(D), McDermott refused to turn over JME's file until JME paid McDermott's outstanding

bill and, on information and belief, McDermott delayed turning over JME's file in order to hide its

negligent disclosure of privileged documents. McDermott's conduct was, in part, reflected in the

following emails:

(1.)   On October 21, 2010, Joel Rubinstein, a partner with MWE, wrote the following in

an e-mail to Mr. Wang, the Chief Executive Officer and President of JME:

"Subject: RE: Qui Tam

Walter,

**I'm told that our firm policy is not to release all files until full
payment is made.**

**If you'd like all the files now, please send a check for the entire
$530,477 and we'll get them all out to you promptly.** I think that's the
best course anyway, since this has taken so long already, and there's no
need to prolong it further." [Emphasis added.]

---

SECOND AMENDED COMPLAINT FOR DAMAGES

1    (2.)    Shortly after receiving Mr. Rubinstein's e-mail, Mr. Wang responded in an e-mail

2    as follows:

3    "Subject: RE: Qui Tam

4    JOEL:

5    **SO YOU, AND YOUR FIRM IS HOLDING THESE FILES HOSTAGE** WHEN WE
     HAVE AGREED TO THESE PAYMENTS. WHY DO THIS WHEN YOU CAN GET
6    ALL THIS SETTLED?

7    WALTER WANG"  [Emphasis added.]

8    (3.)    Later, on December 27, 2010, Claudia Herrarte, of JME, sent the following e-mail

9    to Mr. Rubinstein:

10   "Subject: Invoices

11   Dear Joel,

12   Please advise as to when can we expect a release for JM Eagle's
     liabilities.
13
     Claudia"
14
     (4.)    McDermott then responded to the above e-mail from JME, also on December 27,
15
     2010, as follows:
16
     "From:    Rubinstein, Joel jrubinstein@mwe.com
17   Subject:  RE: Invoices

18   **Once we receive the final payment on the 31 st, we will be in touch to
     coordinate sending all of the files to you and will confirm that JM does
19   not owe anything further.** Thanks.
     Joel L. Rubinstein"  [Emphasis added.]
20
     36.    Based in part on McDermott's conduct, which violated the California *Rules of*
21
     *Professional Conduct*, JME paid McDermott's outstanding bills, which were greater than the
22
     value of the negligent services it provided to JME.  Additionally, the delay by McDermott in
23
     turning over JME's file prevented and delayed JME from learning the true nature and extent of the
24
     negligent disclosure of privileged information and materials by McDermott until shortly before
25
     the filing of the complaint in this case.
26

27

28

                                              12

**E.    The Unexecuted Clawback Agreement in McDermott's Files.**

37.    It was not until August 2011 that McDermott finally returned JME's files.  A review thereof by counsel herein, subsequent to that date, revealed documentary evidence that McDermott considered, researched and, on information and belief JME alleges that McDermott drafted a clawback agreement concerning JME's privileged documents in the *Qui Tam* Action. The evidence was a clawback agreement, in McDermott's files, that never went into effect in the *Qui Tam* Action.  JME did not know, and had no way of knowing, of this unexecuted clawback agreement until August 2011 at the earliest.

**FIRST CAUSE OF ACTION**
**(Legal Malpractice – Against McDermott)**

38.    JME refers to and incorporates paragraphs 1 through 37 of this Complaint as though fully set forth herein.

39.    McDermott owed PLAINTIFF a duty to render legal services competently. McDermott breached that duty by, *inter alia*, producing privileged documents to parties adverse to JME in litigation without obtaining JME's informed consent, failing to supervise attorneys and vendors McDermott contracted with to perform the review and production of documents, charging JME fees and costs for performance of work not properly performed, or not performed at all, billing JME for work that was unnecessary, approving for payment third-party vendor billing for work not competently handled, and refusing to turn over JME's file until its outstanding and inflated bills were paid.

40.    JME alleges, upon information and belief, that McDermott failed to inform it that attorney-client privileged documents and other privileged documents had been disclosed, failed to disclose the scope of such release of privileged documents and failed to take any steps to obtain the return of such privileged documents.  Indeed, the unexecuted clawback agreement found by JME in McDermott's files after they were belatedly returned in or about August 2011 proves that McDermott considered (and likely billed for) steps to secure the return of the privileged documents, but did nothing to implement said steps in actuality.

13

SECOND AMENDED COMPLAINT FOR DAMAGES

1        41.     McDermott's breach caused JME damages, specifically: the privileged documents

2  were produced by McDermott in the underlying *Qui Tam* matter **twice**, to the great prejudice and

3  damage of JME which has **already** incurred damages in excess of $ 350,000.00 in attorney fees

4  and costs litigating a protracted and complex "clawback" motion. But for McDermott's

5  malpractice, the clawback motion would not have been necessary, and JME is entitled to its

6  damages related thereto (including such monetary damages that have already been sustained and

7  continue to be sustained in attorneys' fees and costs) whether or not such motion is successful

8  because JME had to incur the costs of the motion regardless of the outcome thereof.

9        42.     Indeed, if the clawback motion fails, JME's damages are **not only** the substantial

10  fees and costs attendant thereto, but **also** any damages JME sustains in the *Qui Tam* matter. Any

11  judgment against JME in that matter is the direct and proximate result of defendants' legal

12  malpractice, breach of fiduciary duty and negligence that literally **handed** such a significant

13  volume of sensitive and privileged documents to adversaries. JME's damages are thus also the

14  amount of any such judgment and related costs and fees.

15        43.     The delay by McDermott in turning over JME's client file prevented and delayed

16  JME from learning the true nature and extent of the negligent disclosure of privileged information

17  and materials by McDermott until shortly before the filing of the complaint in this case. JME

18  sustained damages due to this unethical delay by McDermott because it increased the complexity

19  and cost of the clawback motion. Further, if the clawback motion is not successful, McDermott's

20  delay will have contributed to turning thousands of privileged documents over to plaintiffs in the

21  *Qui Tam* Action. Any judgment against JME in that matter is the direct and proximate result of

22  defendants' legal malpractice, and JME's damages are the amount of any such judgment and

23  related costs and fees.

24        44.     JME sustained further damages due to McDermott's failure to implement any

25  clawback agreement. This failure necessitated the clawback motion and attendant fees which JME

26  claims as damages. Further, on information and belief, JME was charged significant legal fees by

27  McDermott attendant to drafting and researching a clawback agreement, an agreement that was

28  never introduced into the litigation. Such legal fees form a further basis for JME's damages due to

McDermott's malpractice.  Finally, McDermott's failure to negotiate and implement a clawback agreement contributed to turning thousands of privileged documents over to plaintiffs in the *Qui Tam* Action.  Any judgment against JME in that matter is the direct and proximate result of defendants' legal malpractice, and JME's damages are the amount of any such judgment and related costs and fees.

45.     JME's damages are as alleged herein, and in an amount subject to proof at trial, but are in no event less than the jurisdictional minimum of this court.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty – Against McDermott)

46.     PLAINTIFF  refers to and incorporates paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47.     McDermott owed PLAINTIFF a fiduciary duty.  McDermott breached that duty by, *inter alia*, producing privileged documents to parties adverse to JME in several lawsuits, failing to supervise attorneys and vendors McDermott contracted with to perform the review and production of documents, charging JME fees and costs for performance of such work that was not properly performed, or not performed at all, billing JME for work that was unnecessary, approving for payment third-party vendor billing for work not competently handled, refusing to turn over JME's file until its outstanding bills were paid and failing to inform JME that its refusal to turn over JME's file until its outstanding bills were paid violated the California *Rules of Professional Conduct*.

48.     Defendant's breach of its fiduciary duty to its client caused JME damages in an amount to be proven at trial, but in no event less than the jurisdictional minimum of this Court.

49.     McDermott's breach caused JME damages, specifically: the privileged documents were produced by McDermott in the underlying *Qui Tam* matter **twice**, to the great prejudice and damage of JME which has **already** incurred damages in excess of $ 350,000.00 in attorneys' fees and costs litigating a protracted and complex "clawback" motion.  But for McDermott's malpractice, the clawback motion would not have been necessary, and JME is entitled to its

15

SECOND AMENDED COMPLAINT FOR DAMAGES

1   damages related thereto whether or not such motion is successful because JME had to incur the

2   costs of the motion regardless of the outcome thereof.

3        50.    Indeed, if the clawback motion fails, JME's damages are **not only** the substantial

4   fees and costs attendant thereto, but **also** any damages JME sustains in the *Qui Tam* matter.  Any

5   judgment against JME in that matter is the direct and proximate result of defendants' legal

6   malpractice, breach of fiduciary duty and negligence that literally **handed** such a significant

7   volume of sensitive and privileged documents to adversaries.  JME's damages are thus the amount

8   of any such judgment and related costs and fees.

9        51.    The delay by McDermott in turning over JME's client file prevented and delayed

10  JME from learning the true nature and extent of the negligent disclosure of privileged information

11  and materials by McDermott until shortly before the filing of the complaint in this case.  JME

12  sustained damages due to this unethical delay by McDermott because it increased the complexity

13  and cost of the clawback motion.  Further, if the clawback motion is not successful, McDermott's

14  unethical delay will have contributed to turning thousands of privileged documents over to

15  plaintiffs in the *Qui Tam* Action.  Any judgment against JME in that matter is the direct and

16  proximate result of defendants' legal malpractice, and JME's damages are the amount of any such

17  judgment and related costs and fees.

18       52.    JME sustained further damages due to McDermott's failure to implement any

19  clawback agreement.  This failure necessitated the clawback motion and attendant fees which JME

20  claims as damages.  Further, on information and belief, JME was charged significant legal fees by

21  McDermott attendant to drafting and researching a clawback agreement, an agreement that was

22  never introduced into the litigation.  Such legal fees form an further basis for JME's damages due

23  to McDermott's malpractice.  Finally, McDermott's failure to negotiate and implement a clawback

24  agreement contributed to turning thousands of privileged documents over to plaintiffs in the *Qui*

25  *Tam* Action.  Any judgment against JME in that matter is the direct and proximate result of

26  defendants' legal malpractice, and JME's damages are the amount of any such judgment and

27  related costs and fees.

28

SECOND AMENDED COMPLAINT FOR DAMAGES

53.     On information and belief, PLAINTIFF alleges that McDermott's actions were intentional, fraudulent, oppressive and malicious, and were committed with the specific intent of causing PLAINTIFF injury and damage and/or were in conscious disregard of PLAINTIFF's rights Accordingly, PLAINTIFF is entitled to recover exemplary and punitive damages.

54.     The actions of McDermott were (1) fraudulent, meaning an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury; (2) malicious, meaning conduct which is intended by the defendants to cause injury to PLAINTIFF or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others; (3) and/or oppressive, meaning despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; and done with the intention of depriving PLAINTIFF of substantial rights. PLAINTIFF is therefore entitled to punitive damages in a sufficient amount to make an example of, punish defendant, and deter future fraudulent, oppressive and malicious misconduct in an amount according to proof at trial.

55.     On information and belief, PLAINTIFF alleges that McDermott's officers, directors and/or managing agents authorized and ratified the actions of McDermott partner Joel Rubinstein when he refused to return JME's client files in violation of applicable California *Rules of Professional Conduct* over a fee dispute.  Alternatively, McDermott partner Joel Rubinstein (billing rate $825.00 per hour in 2010) himself is an "officer, director or managing agent" of McDermott, since he demanded (via email dated December 27, 2010) payment to McDermott in exchange for the return of JME's client files, a necessarily high-ranking decision, given that such decision in no uncertain terms committed McDermott to a course of conduct in contravention of applicable ethical standards.  Thus, Rubinstein's actions subject McDermott to punitive damages per code in an amount according to proof at trial.

17

SECOND AMENDED COMPLAINT FOR DAMAGES

**THIRD CAUSE OF ACTION**
**(Accounting – Against All Defendants)**

56.      PLAINTIFF refers to and incorporates paragraphs 1 through 37 of this Complaint as though fully set forth herein.

57.      JME is informed and believes and thereon alleges that Defendants billed JME for work not necessary, not done and not done competently, all of which was unlawful.

58.      The amount of such billings is unknown to JME and cannot be ascertained without an accounting of the amounts paid for such billing.

**FOURTH CAUSE OF ACTION**
**(Negligence – Against Navigant and Stratify)**

59.      PLAINTIFF refers to and incorporates paragraphs 1 through 37, and 57-58 of this Complaint as though fully set forth herein.

60.      At all times relevant herein, defendants Navigant and Stratify undertook a duty to provide e-Discovery services in the *Qui Tam* Action to JME concerning the collection, indexing and database hosting of JME's ESI collected from approximately 160 custodians.  These services were to be provided at or above the industry standard of care.  Navigant and Stratify held themselves out as sophisticated and specialized e-Discovery vendors whose combined services enable clients to access project information from the earliest preservation and collection efforts to the processing reports and review metrics, and manage same from one convenient and central location.

61.      At all times relevant herein, JME relied on Navigant and Stratify in the *Qui Tam* Action to perform using their advertised skill and ability as e-Discovery experts and complex litigation project managers, and Navigant and Stratify undertook a duty to JME to perform as such.

62.      Navigant and Stratify negligently and carelessly rendered services as e-Discovery and project management specialists insofar as: (1) they failed to search and filter adequately the documents known **not** to be covered by the privilege filter; and (2) failed to properly index and otherwise maintain the database(s) containing JME's electronically stored information (ESI), including metadata fields.

18

SECOND AMENDED COMPLAINT FOR DAMAGES

63.     As a direct and proximate result of Navigant and Stratify's negligence and carelessness, JME's privileged documents (many with the words "Attorney-Client Privileged" emblazoned prominently thereon) were: (1) not identified by any privilege filter; (2) not categorized as "presumptively privileged;" and (3) dumped into the general document population (*i.e.* non-presumptively privileged) where they were produced to JME's adversaries in the "case within the case," the *Qui Tam* Action.

64.     The negligence of Navigant and Stratify caused JME damages, specifically: the privileged documents were produced in the underlying *Qui Tam* matter **twice**, to the great prejudice and damage of JME which has **already** incurred damages in excess of $ 350,000.00 in attorneys' fees and costs litigating a protracted and complex "clawback" motion.  But for Navigant and Stratify's negligence, the clawback motion would not have been necessary, and JME is entitled to its damages related thereto whether or not such motion is successful because JME had to incur the costs of the motion regardless of the outcome thereof.

65.     Indeed, if the clawback motion fails, JME's damages are **not only** the substantial fees and costs attendant thereto, but **also** any damages JME sustains in the *Qui Tam* matter.  Any judgment against JME in that matter is the direct and proximate result of the negligence of Navigant and Stratify that literally **handed** such a significant volume of sensitive and privileged documents to adversaries.  JME's damages are thus the amount of any such judgment and related costs and fees.

66.     Defendants' negligence caused JME damages in an amount to be proven at trial, but in no event less than the jurisdictional minimum of this Court.

*WHEREFORE*, PLAINTIFF prays for judgment against defendants, as follows:

ON THE FIRST CAUSE OF ACTION:

1.     Damages according to proof at trial.

SECOND AMENDED COMPLAINT FOR DAMAGES

ON THE SECOND CAUSE OF ACTION:

1.    Damages according to proof at trial.

2.    Punitive damages in an amount according to proof at trial.


ON THE THIRD CAUSE OF ACTION:

1.    An accounting of the fees and costs paid to Defendants.


ON THE FOURTH CAUSE OF ACTION:

1.    Damages according to proof at trial.


ON ALL CAUSES OF ACTION:

1.    For costs of suit incurred herein.

2.    For reasonable attorneys' fees.

3.    Such other and further relief as the Court may deem just and proper.


Respectfully submitted,


Dated: June 25, 2012.             HOBSON BERNARDINO + DAVIS LLP


By: _____
Rafael Bernardino, Jr.
Attorneys for PLAINTIFF
J-M MANUFACTURING COMPANY, INC.

20
SECOND AMENDED COMPLAINT FOR DAMAGES

**PROOF OF SERVICE BY MAIL**
**(California Code of Civil Procedure, §§1013a, 2015.5)**

STATE OF CALIFORNIA            ]
                               ] ss.
COUNTY OF LOS ANGELES:         ]

I am a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within entitled action; my business address is 333 South Hope Street, Suite 4000, Los Angeles, CA 90071.

I am readily familiar with the business practices at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the regular course of business.

On **June 25, 2012,** I served the following documents: **Second Amended Complaint** on the interested parties in said action.

■      [BY MAIL] - I personally delivered the documents listed above to the parties or their attorneys in the following manner:

John M. Moscarino
McLeod, Moscarino, et al.
707 Wilshire Boulevard, Suite 5000
Los Angeles, California 90017

❑      BY FACSIMILE – by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:30 p.m.

❑      FEDERAL - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made
STATE - I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **June 25, 2012,** at Los Angeles, California.

Rafael Bernardino, Jr.                          _____
(Print name)                                              (signature)

1