







Home > For Lawyers > Ethics > Legal Ethics > Opinions

# Opinion 352

**Professional Responsibility Duties for Temporary Contract Lawyers and the Firms that Hire Them**

The imputation of a temporary contract lawyer's individual conflicts to a hiring firm under D.C. Rule 1.10 depends on the nature and extent of the lawyer's relationship with the firm and the extent of the temporary lawyer's access to the firm's confidential client information. A temporary contract lawyer who works with the same firm sporadically on a few different projects, or on a single project for a longer period of time, would not be "associated with" the hiring firm if the firm does not have or otherwise create the impression that the temporary contract lawyer has a continuing relationship with the firm, and the firm institutes appropriate safeguards to ensure that the temporary contract lawyer does not have access to the firm's confidential client information except for the specific matter or matters on which he is working.

In addition, the temporary contract lawyer and the hiring firm must protect the confidentiality of all client information, and the firm must take appropriate steps to avoid obtaining the confidences and secrets the temporary contract lawyer learned during his former employment.

**Applicable Rules**

- Rule 1.6 (Confidentiality of Information)
- Rule 1.9 (Duties to Former Clients)
- Rule 1.10 (Imputed Disqualification: General Rule)
- Rule 4.4 (Respect for Rights of Third Persons)

**Inquiry**

The Committee has received an inquiry from a temporary contract lawyer who works for Law Firm A, which is representing a party in a multi–party case. The project the temporary contract attorney was hired to perform ends, and Law Firm A terminates the contract. The litigation of the case continues. Law Firm B, a firm representing another party adverse to the party Law Firm A represents in the same or a substantially related case, wants to hire the temporary contract lawyer to perform work on an unrelated matter.[1]

The temporary contract lawyer would work solely on a single matter for Law Firm B, performing tasks such as digesting transcripts and reviewing discovery documents for responsiveness and privilege. The temporary contract lawyer works through a number of temporary service agencies that have an arrangement under which Law Firm B pays for the temporary contract lawyer's services.

The temporary contract lawyer might work for Law Firm B at a satellite office, essentially a warehouse resembling a call center, but with computer terminals instead of telephones. Alternatively, the temporary contract lawyer might work in a

conference room or other utility space onsite at Law Firm B set up specifically for the project that is segregated from the rest of the firm's premises. The documents pertaining to the temporary contract lawyer's assignment would be accessed electronically by a secure line restricted to review of the documents only for the single unrelated matter. On the basis of these facts, the temporary contract lawyer asks whether his individual conflicts would be imputed to Law Firm B under D.C. Rule 1.10(b).

The Committee also recognizes that because of the imputation provisions of D.C. Rule 1.10(b), temporary contract lawyers often may have difficulty surviving a firm's conflict review process because they frequently move from one law firm to another and repeatedly go through the conflicts review process. As a result, their ability to find work may be significantly restricted. Therefore, we also provide some general guidance regarding the circumstances when a temporary contract lawyer may be "associated with" a hiring firm, and his conflicts accordingly imputed to the firm.

**Discussion**

In Opinion 284, the Committee defined a "temporary lawyer" as:

> one who is not a partner and who is employed by a practitioner or a law firm to work on either a specific project or matter or for a fixed or otherwise limited period of time. If the relationship is expected to last indefinitely, regardless of whether it actually does, the [lawyer is not considered to be a temporary lawyer].

D.C. Legal Ethics Opinion 284 (1998). The Committee noted that part-time lawyers who work exclusively with one firm for an indefinite period of time are not temporary lawyers. The Committee pointed out that a "temporary lawyer may be hired directly or through an employment agency for a fee, and may be paid directly by the law firm or by the agency." *Id*. The Committee also recognized that there is wide array of employment arrangements between hiring firms and temporary contract lawyers. *Id*. As a result, whether a temporary contract lawyer is "associated with" a firm will depend on the facts and circumstances of each situation.

D.C. Rule 1.10(b) governs the imputation of conflicts for lawyers moving from one firm to another. The rule provides in relevant part:

> When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in a matter which is the same as, or substantially related to, a matter with respect to which the lawyer had previously represented a client whose interests are materially adverse to that person and about whom the lawyer in fact acquired information protected by Rule 1.6 that is material to the matter.

Thus, typically, if a lawyer leaves one law firm to work at another law firm, the lawyer's new firm would be prohibited from representing a client with interests materially adverse to those of the lawyer's former client in the same or substantially related matter if the lawyer has material confidential information about the matter. *See* D.C. Rule 1.10, cmt. [17] ("[U]nder paragraph (b), if a lawyer left one firm for another, the new affiliation would preclude the lawyer's new firm from continuing to represent clients with interests materially adverse to those of the lawyer's former clients in the same or

substantially related matters."); D.C. Rule 1.10, cmt. [15] ("The provisions of paragraphs (b) and (c) which refer to possession of protected information operate to disqualify the firm only when the lawyer involved has actual knowledge of information protected by Rule 1.6."); D.C. Rule 1.6  ("Except when permitted under paragraph (c), (d), or (e), a lawyer shall not knowingly: (1) reveal a confidence or secret of the lawyer's client; (2) use a confidence or secret of the lawyer's client to the disadvantage of the client; (3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person.").**[2]**

D.C. Rule 1.10(b) applies only when a lawyer is "associated with a firm." Comment [1] to D.C. Rule 1.10 provides guidance regarding when lawyers are associated in a firm:

> [T]wo practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the Rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to confidential information concerning the clients they serve.

D.C. Rule 1.10, cmt. [1].

The Committee previously has considered whether a contract lawyer would be associated with a firm under D.C. Rule 1.10(a) **[3]** where a law firm sought to hire a former firm lawyer on a contract basis to assist in providing legal services to some of the firm's clients. See D.C. Legal Ethics Opinion 255 (1995). In that situation, the former lawyer was not included on the firm's letterhead or in other listings of the firm's lawyers. The firm screened the lawyer from confidential information about firm clients on matters in which he was not employed as an independent contractor. *Id.* In addition, the firm's promotional materials and letters to clients that mentioned his availability would make clear that he was available to work on specific matters on a case–by–case basis and that he was not going to have a continuing relationship with the firm. *Id.* Based on these facts, the Committee concluded that:

[T]he association of a lawyer with a firm on an ad hoc, case-by-case basis does not create that kind of continuing relationship, triggering imputation under Section 1.10 of the individual lawyer's disqualifications to the firm—except with respect to the individual matters on which the lawyer is associated with the firm—so long as the firm does not create the impression among its clients or the public at large that such a continuing relationship exists.

*Id.*

The Committee also has addressed whether attorneys who share office space and/or services are associated in a firm under D.C. Rule 1.10. *See* D.C. Legal Ethics Opinion 303 (2001). The Committee opined that attorneys participating in such arrangements must take all steps reasonably necessary to protect the confidentiality of their individual client information and the independence of their respective practices. *Id.* The Committee added that any sharing arrangements should be

structured to avoid creating the impression that the attorneys are affiliated with one another. *Id.* The Committee concluded that office- and/or service–sharing arrangements could create imputed conflicts for the participating attorneys, but noted that any particular situation would have to be evaluated on a case–by–case basis. *Id*.

As the comment to Rule 1.10 and our prior opinions suggest, whether a temporary contract attorney is "associated with" a hiring firm will depend on the scope of the attorney's relationship with the firm, the length of the attorney's service to the firm, and the potential for his exposure to the firm's confidential client information. The analysis is not affected by whether the hiring firm or a contracting agency directly pays the temporary contract lawyer.

In the specific situation presented by this inquiry, the temporary contract lawyer does not have a past or ongoing association with Law Firm B. Law Firm B hired him to work on one project of limited duration. He will work in a separate location away from the firm's office space or in a segregated area within the firm. His electronic access to the firm and the confidential information of its clients is confined to the specific project on which he is working. We think that in this circumstance the temporary contract lawyer would not be "associated with" the hiring firm (Law Firm B), and thus, his conflicts would not be imputed to Law Firm B under D.C. Rule 1.10(b). Accordingly, the hiring firm must conduct a conflict check only for the matters on which the temporary contract lawyer will be working for the firm.

On the other hand, a temporary contract lawyer who is located in a firm's office space, works simultaneously on multiple projects for the firm, is listed on the firm's website or other directories, and has access to the firm's e-mail system and electronic documents would be "associated with" the contracting firm.

In contrast, a temporary contract lawyer who works intermittently with the same firm on a small number of projects or on one long–term assignment would not be "associated with" the contracting firm so long as the firm does not have an ongoing relationship with the temporary contract lawyer. The contracting firm also must avoid creating the impression that the temporary contract lawyer is "associated with" the firm by listing him on the firm's letterhead, website or other directories, permitting him to use the firm's business cards, or introducing him to clients and others as a long-term member of the firm. In addition, the firm must take all appropriate steps to ensure that the temporary contract lawyer has access only to the confidential client information for the matter on which he is working.[4]

In circumstances where a temporary contract lawyer is not "associated with" the hiring firm, the temporary contract lawyer and the hiring firm still have professional responsibility obligations. The temporary contract lawyer must preserve any confidential client information learned during his prior employment. *See* D.C. Rule 1.6(g) ("The lawyer's obligation to preserve the client's confidences and secrets continues after termination of the lawyer's employment."); D.C. Rule 1.10, cmt. [16] ("Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See Rule 1.6.").

The law firm must institute safeguards to prevent the improper disclosure or misuse of the firm's confidential client information, including talking with the temporary contract lawyer about his duty to avoid obtaining such information and executing a confidentiality agreement memorializing this understanding. *See* D.C. Rule 4.4(a) ("In representing a client … a lawyer shall not knowingly use methods of obtaining evidence that violate the legal rights of … a [third] person."). If the temporary contract lawyer is located in the firm's office space, the firm must take extra precautions to ensure that the temporary contract lawyer will not have access to the firm's confidential client information. The firm should locate the temporary contract lawyer in a place that is plainly designated for the temporary contract lawyer so that firm personnel will not leave confidential information in that space. Other safeguards might include securing file cabinets and storage areas containing confidential client files, notifying attorneys and staff not to discuss the firm's cases with the temporary contract lawyer, instructing attorneys and staff about their obligations to preserve the confidential information of the firm's clients and maintaining appropriate oversight over firm employees to ensure that they comply with these obligations. *See, e.g.* D.C. Legal Ethics Opinion 279 (1998) (discussing elements of an effective screen to avoid imputed conflicts).

The hiring firm also must take steps to avoid obtaining any confidential client information the temporary contract attorney learned during his former employment. *See* D.C. Rule 4.4(a); D.C. Legal Ethics Opinion 285 (1998) (Rule 4.4 prohibits attorneys in law firms that hire former government employees with confidential government information from inducing the employee to disclose privileged or statutorily protected information); D.C. Legal Ethics Opinion 227 (1992) (opining that firm must not exploit any confidences or secrets paralegal obtained during her former employment).

**Conclusion**
Whether a temporary contract attorney is "associated with" the hiring firm pursuant to D.C. Rule 1.10(b) is a fact-bound inquiry and will depend on the scope and nature of the temporary contract attorney's relationship with the firm and the potential for his exposure to the confidences and secrets of the firm's clients for matters on which he is not working. When a temporary contract lawyer works on a single project for a firm, is physically segregated from the firm's office space, and has no access to the confidential information of the firm's other clients, he would not be associated with the contracting firm, and his conflicts would not be imputed under D.C. Rule 1.10(b).

The temporary contract lawyer and the hiring firm must preserve any confidential client information, and the firm should employ appropriate prophylactic measures to secure such information. The hiring firm also should take appropriate steps to protect the confidential information the temporary contract lawyer learned during his prior employment.

Published: February 2010

[1] The temporary contract lawyer is personally prohibited from working on the same or substantially related matter for an adverse party under D.C. Rule 1.9, unless the former client consents. *See* D.C. Rule 1.9 ("A lawyer who has previously represented a client in a matter shall not represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed

consent.").

**[2]** The clients may waive a firm's disqualification under D.C. Rule 1.10 *See* D.C. Rule 1.10(d) ("A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7.").

**[3]** D.C. Rule 1.10(a) provides that:  "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless: (1) the prohibition of the individual lawyer's representation is based on an interest of the lawyer described in Rule 1.7(b)(4) and that interest does not present a significant risk of adversely affecting the representation of the client by the remaining lawyers in the firm; or (2) the representation is permitted by Rules 1.11, 1.12, or 1.18."

**[4]** Some firms may not have off-site space for temporary contract lawyers, and the firm's premises may not be equipped to accommodate a segregated space for them. In this instance, a hiring firm may avoid imputation of the temporary contract lawyer's conflicts only if the firm can demonstrate that alternative physical arrangements were not feasible, and it employs the prophylactic measures discussed in this opinion or their functional equivalent.




The District of Columbia Bar | 1101 K Street NW, Suite 200 | Washington DC 20005 | 202-737-4700 | **Hours/Directions/Parking**
©2013 D.C. Bar **Restrictions on Use** All rights reserved. **Mobile site** | **Privacy Policy** | **Accessibility Policy** | **Disclaimer** | **Author guidelines**