# AMERICAN BAR ASSOCIATION
STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY

**Formal Opinion 08-451**                             **August 5, 2008**
**Lawyer's Obligations When Outsourcing**
**Legal and Nonlegal Support Services**

> *A lawyer may outsource legal or nonlegal support services provided the lawyer remains ultimately responsible for rendering competent legal services to the client under Model Rule 1.1. In complying with her Rule 1.1 obligations, a lawyer who engages lawyers or nonlawyers to provide outsourced legal or nonlegal services is required to comply with Rules 5.1 and 5.3. She should make reasonable efforts to ensure that the conduct of the lawyers or nonlawyers to whom tasks are outsourced is compatible with her own professional obligations as a lawyer with "direct supervisory authority" over them.*
>
> *In addition, appropriate disclosures should be made to the client regarding the use of lawyers or nonlawyers outside of the lawyer's firm, and client consent should be obtained if those lawyers or nonlawyers will be receiving information protected by Rule 1.6. The fees charged must be reasonable and otherwise in compliance with Rule 1.5, and the outsourcing lawyer must avoid assisting the unauthorized practice of law under Rule 5.5.*[1]

Many lawyers engage other lawyers or nonlawyers, as independent contractors, directly or through intermediaries, on a temporary or an ongoing basis, to provide various legal and nonlegal support services. Outsourced tasks range from the use of a local photocopy shop for the reproduction of documents, to the retention of a document management company for the creation and maintenance of a database for complex litigation, to the use of a third-party vendor to provide and maintain a law firm's computer system, to the hiring of a legal research service to prepare a 50-state survey of the law on an issue of importance to a client, or even to the engagement of a group of foreign lawyers to draft patent applications or develop legal strategies and

---

1. This opinion is based on the Model Rules of Professional Conduct as amended by the ABA House of Delegates through February 2008. The laws, court rules, regulations, rules of professional conduct, and opinions promulgated in individual jurisdictions are controlling.

---

AMERICAN BAR ASSOCIATION STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY
321 N. Clark Street, Chicago, Illinois 60610-4714 Telephone (312)988-5300
CHAIR: Steven C. Krane, New York, NY ❑ T. Maxfield Bahner, Chattanooga, TN ❑ Amie L. Clifford, Columbia, SC ❑ Edwin L. Felter, Jr., Denver, CO ❑ Terrence M. Franklin, Los Angeles, CA ❑ Susan R. Martyn, Toledo, OH ❑ Robert H. Mundheim, New York, NY ❑ Arden J. Olson, Eugene, OR ❑ Mary Robinson, Downers Grove, IL ❑ Sylvia E. Stevens, Lake Oswego, OR ❑
CENTER FOR PROFESSIONAL RESPONSIBILITY: George A. Kuhlman, Ethics Counsel; Eileen B. Libby, Associate Ethics Counsel

© 2008 by the American Bar Association. All rights reserved.

prepare motion papers in U.S. litigation.

The outsourcing trend is a salutary one for our globalized economy. Labor costs vary greatly across the United States and throughout the rest of the world. Outsourcing affords lawyers the ability to reduce their costs and often the cost to the client to the extent that the individuals or entities providing the outsourced services can do so at lower rates than the lawyer's own staff. In addition, the availability of lawyers and nonlawyers to perform discrete tasks may, in some circumstances, allow for the provision of labor-intensive legal services by lawyers who do not otherwise maintain the needed human resources on an ongoing basis. A small firm might not regularly employ the lawyers and legal assistants required to handle a large, discovery-intensive litigation effectively. Outsourcing, however, can enable that firm to represent a client in such a matter effectively and efficiently, by engaging additional lawyers to conduct depositions or to review and analyze documents, together with a temporary staff of legal assistants to provide infrastructural support.

There is nothing unethical about a lawyer outsourcing legal and nonlegal services, provided the outsourcing lawyer renders legal services to the client with the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation," as required by Rule 1.1. Comment [1] to Rule 1.1 further counsels:

> In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question.

There is no unique blueprint for the provision of competent legal services. Different lawyers may perform the same tasks through different means, all with the necessary "legal knowledge, skill, thoroughness and preparation." One lawyer may choose to do all of the work herself. Another may delegate tasks to a team of subordinate lawyers and nonlegal staff. Others may decide to outsource tasks to independent service providers that are not within their direct control. Rule 1.1 does not require that tasks be accomplished in any special way. The rule requires only that the lawyer who is responsible to the client satisfies her obligation to render legal services competently.

However, Rules 5.1 and 5.3 impose additional obligations on lawyers who have "direct supervisory authority" over other lawyers and nonlawyers. Rule 5.1(b) states that "[a] lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct." Correlatively, Rule 5.3(b) requires lawyers who employ, retain, or associate with nonlawyers to "make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." These provisions apply regardless of

whether the other lawyer or the nonlawyer is directly affiliated with the supervising lawyer's firm.[2]

The challenge for an outsourcing lawyer is, therefore, to ensure that tasks are delegated to individuals who are competent to perform them, and then to oversee the execution of the project adequately and appropriately. When delegating tasks to lawyers in remote locations, the physical separation between the outsourcing lawyer and those performing the work can be thousands of miles, with a time difference of several hours further complicating direct contact. Electronic communication can close this gap somewhat, but may not be sufficient to allow the lawyer to monitor the work of the lawyers and nonlawyers working for her in an effective manner.

At a minimum, a lawyer outsourcing services for ultimate provision to a client should consider conducting reference checks and investigating the background of the lawyer or nonlawyer providing the services as well as any nonlawyer intermediary involved, such as a placement agency or service provider. The lawyer also might consider interviewing the principal lawyers, if any, involved in the project, among other things assessing their educational background. When dealing with an intermediary, the lawyer may wish to inquire into its hiring practices to evaluate the quality and character of the employees likely to have access to client information. Depending on the sensitivity of the information being provided to the service provider, the lawyer should consider investigating the security of the provider's premises, computer network, and perhaps even its recycling and refuse disposal procedures. In some instances, it may be prudent to pay a personal visit to the intermediary's facility, regardless of its location or the difficulty of travel, to get a firsthand sense of its operation and the professionalism of the lawyers and nonlawyers it is procuring.

When engaging lawyers trained in a foreign country, the outsourcing lawyer first should assess whether the system of legal education under which the lawyers were trained is comparable to that in the United States. In some nations, people can call themselves "lawyers" with only a minimal level of training. Also, the professional regulatory system should be evaluated to determine whether members of the nation's legal profession have been inculcated with core ethical principles similar to those in the United States, and whether the nation's disciplinary enforcement system is effective in policing

---

2. Although Comment [1] to Rule 5.1 states that "[p]aragraph (b) applies to lawyers who have supervisory authority over the work of other lawyers *in a firm*" (emphasis supplied), we do not believe that the drafters of the Model Rules intended to restrict the application of Rule 5.1(b) to the supervision of lawyers within "firms" as defined in Rule 1.0(c). A contrary interpretation would lead to the anomalous result that lawyers who outsource have a lower standard of care when supervising outsourced lawyers than they have with respect to lawyers within their own firm. As discussed below, the contrary is true in many respects.

its lawyers. The lack of rigorous training or effective lawyer discipline does not mean that individuals from that nation cannot be engaged to work on a particular project. What it does mean is that, in such circumstances, it will be more important than ever for the outsourcing lawyer to scrutinize the work done by the foreign lawyers – perhaps viewing them as nonlawyers – before relying upon their work in rendering legal services to the client.

Consideration also should be given to the legal landscape of the nation to which the services are being outsourced, particularly the extent that personal property, including documents, may be susceptible to seizure in judicial or administrative proceedings notwithstanding claims of client confidentiality. Similarly, the judicial system of the country in question should be evaluated to assess the risk of loss of client information or disruption of the project in the event that a dispute arises between the service provider and the lawyer and the courts do not provide prompt and effective remedies to avert prejudice to the client.

There are several additional considerations that must be taken into account under the Model Rules. First, at the outset, it may be necessary for the lawyer to provide information concerning the outsourcing relationship to the client, and perhaps to obtain the client's informed consent to the engagement of lawyers or nonlawyers who are not directly associated with the lawyer or law firm that the client retained. In Formal Opinion 88-356,[3] we opined that when a lawyer engaged the services of a temporary lawyer, a form of outsourcing, an obligation to advise the client of that fact and to seek the client's consent would arise if the temporary lawyer was to perform independent work for the client without the close supervision of the hiring lawyer or another lawyer associated with her firm. Relying on Rule 1.2(a), requiring lawyers to consult with clients as to the means by which the clients' objectives are to be pursued, Rule 1.4, relating to client communication, and Rule 7.5(d), prohibiting lawyers from implying that they practice in a partnership or other organization when that is not the fact, we concluded that clients are entitled to know who or what entity is representing them, and thus could veto the lawyer's use of a temporary lawyer.

Relatedly, the lawyer may not make affirmative misrepresentations to the client regarding the status of lawyers and nonlawyers who are not in the lawyer's employ under Rule 7.1, requiring truthfulness in communications regarding lawyer services, and Rule 8.4(c), prohibiting dishonesty, fraud, deceit, or misrepresentation.

We recognize that Formal Opinion 88-356 held that the client ordinarily is not entitled to notice that its legal work is being performed by a temporary lawyer. We stated that "[c]lient consent to the involvement of firm personnel and the disclosure to those personnel of confidential information necessary to

---

3. ABA Comm. on Ethics and Prof'l Responsibility Formal Op. 88-356 (Dec. 16, 1988) (Temporary Lawyers).

the representation is inherent in the act of retaining the firm." However, that statement was predicated on the assumption that the relationship between the firm and the temporary lawyer involved a high degree of supervision and control, so that the temporary lawyer would be tantamount to an employee, subject to discipline or even firing for misconduct. That ordinarily will not be the case in an outsourcing relationship, particularly in a relationship involving outsourcing through an intermediary that itself has the employment relationship with the lawyers or nonlawyers in question.

Thus, where the relationship between the firm and the individuals performing the services is attenuated, as in a typical outsourcing relationship, no information protected by Rule 1.6 may be revealed without the client's informed consent. The implied authorization of Rule 1.6(a) and its Comment [5] thereto to share confidential information within a firm does not extend to outside entities or to individuals over whom the firm lacks effective supervision and control.

Also, the outsourcing lawyer should be mindful of the obligation to "act competently to safeguard information relating to the representation of a client against inadvertent or unauthorized disclosure by the lawyer or other persons who are participating in the representation of the client or who are subject to the lawyer's supervision."[4] This requires the lawyer to recognize and minimize the risk that any outside service provider may inadvertently – or perhaps even advertently – reveal client confidential information to adverse parties or to others who are not entitled to access.[5] Written confidentiality agreements are, therefore, strongly advisable in outsourcing relationships. Likewise, to minimize the risk of potentially wrongful disclosure, the outsourcing lawyer should verify that the outside service provider does not also do work for adversaries of their clients on the same or substantially related matters; in such an instance, the outsourcing lawyer could choose another provider.

Second, the fees charged by the outsourcing lawyer must be reasonable and otherwise comply with the requirements of Rule 1.5. In Formal Opinion No. 00-420,[6] we concluded that a law firm that engaged a contract lawyer could add a surcharge to the cost paid by the billing lawyer provided the total charge represented a reasonable fee for the services provided to the client. This is not substantively different from the manner in which a conventional law firm bills for the services of its lawyers. The firm pays a lawyer a salary, provides him with employment benefits, incurs office space and other overhead costs to support him, and also earns a profit from his services; the client generally is not informed of the details of the financial relationship between

---

4. Rule 1.6, cmt. 16.
5. Cf. ABA Comm. on Ethics and Prof'l Responsibility Formal Op. 95-398 (Oct. 27, 1995) (Access of Nonlawyers to a Lawyer's Data Base).
6. ABA Comm. on Ethics and Prof'l Responsibility Formal Op. 00-420 (Nov. 29, 2000) (Surcharge to Client for Use of a Contract Lawyer).

the law firm and the lawyer. Likewise, the lawyer is not obligated to inform the client how much the firm is paying a contract lawyer; the restraint is the overarching requirement that the fee charged for the services not be unreasonable. If the firm decides to pass those costs through to the client as a disbursement, however, no markup is permitted. In the absence of an agreement with the client authorizing a greater charge, the lawyer may bill the client only its actual cost plus a reasonable allocation of associated overhead, such as the amount the lawyer spent on any office space, support staff, equipment, and supplies for the individuals under contract.[7] The analysis is no different for other outsourced legal services, except that the overhead costs associated with the provision of such services may be minimal or nonexistent if and to the extent that the outsourced work is performed off-site without the need for infrastructural support. If that is true, the outsourced services should be billed at cost, plus a reasonable allocation of the cost of supervising those services if not otherwise covered by the fees being charged for legal services.

Finally, the outsourcing lawyer must be mindful of the admonition of Rule 5.5(a) to avoid assisting others to "practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction...." This Committee lacks the authority to express an opinion as to whether the provision of legal services by any particular lawyer, nonlawyer, or intermediary constitutes the unauthorized practice of law. Ordinarily, an individual who is not admitted to practice law in a particular jurisdiction may work for a lawyer who is so admitted, provided that the lawyer remains responsible for the work being performed and that the individual is not held out as being a duly admitted lawyer. We note only that if the activities of a lawyer, nonlawyer, or intermediary employed in an outsourcing capacity are held to be the unauthorized practice of law, and the outsourcing lawyer facilitated that violation of law by action or inaction, the outsourcing lawyer will have violated Rule 5.5(a).

---

[7]. See ABA Comm. on Ethics and Prof'l Responsibility Formal Op. 93-379 (Dec. 6, 1993) (Billing for Professional Fees, Disbursements and Other Expenses).