Dcbghenc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

WILLIAM HENIG,

        Plaintiff,

    v.                         13 CV 1432(RA)

QUINN EMANUEL URQUHART &
SULLIVAN, LLP,  ET AL.

        Defendants.
------------------------------x
                              New York, N.Y.
                              December 11, 2013
                              11:30 a.m.

Before:

                HON. RONNIE ABRAMS,

                       District Judge

                  APPEARANCES

JOSEPH & KIRSCHENBAUM, LLP
    Attorneys for Plaintiff William Henig
D. MAIMON KIRSCHENBAUM
DENISE SCHULMAN

QUINN EMANUEL URQUHART & SULLIVAN
    Attorneys for Defendant Quinn Emanuel
MARC GREENWALD
ELINOR SUTTON

BRYAN CAVE
    Attorney for Defendant DTI
ZACHARY HUMMEL

1            (Case called)
2            MR. KIRSCHENBAUM:  Maimon Kirschenbaum for the
3    plaintiff.  Good morning.
4            MR. GREENWALD:  Mark Greenwald and Elinor Sutton on
5    behalf of defendant Quinn Emanuel.  Good morning.
6            MR. HUMMEL:  Zachary Hummel, Bryan Cave, on behalf of
7    the defendant.
8            THE COURT:  Before me is defendants' motion to
9    dismiss.  I have considered the parties' submissions, as well
10   as the arguments made at oral argument and I'm ready to rule.
11           Plaintiff is a licensed member of the New York bar who
12   reviewed documents relating to a pending litigation for the law
13   firm of Quinn Emanuel for approximately six weeks.  He brings
14   this FLSA collective action and class action suit alleging he
15   is due overtime under state and federal law.  Defendants move
16   to dismiss on the basis that plaintiff is exempt from overtime
17   requirements pursuant to 29 C.F.R. 541.304(a)(1) because he was
18   an employee employed in a "bona fide professional capacity,"
19   namely, the practice of law.
20           Plaintiff, by contrast, argues that given the "routine
21   nature" of his job duties, which he claims solely involved
22   "sorting documents into categories" based on specific search
23   terms, he did not utilize any legal knowledge and/or judgment
24   and did not engage in the practice of law.
25           Although defendants have offered forceful arguments

1    regarding why Quinn Emanuel hired contract attorneys as opposed
2    to nonlawyers for the document review at issue, how plaintiff
3    utilized his legal training and education in performing his
4    work, and why he was indeed engaged in the practice of law,
5    those arguments are more appropriately made on summary judgment
6    when the Court can rely on the record in making its
7    determination, instead of on "common sense" and "judicial
8    experience," which defendants urge are sufficient.
9             Accordingly, I'm going to deny the motion to dismiss.
10   Because determination of this issue may result in dismissal of
11   the entirety of the case, however, discovery at this point will
12   be limited to the sole issue of whether Henig was practicing
13   law and thus whether the exemption set forth at 29 C.F.R.
14   541.304 applies.  After that limited discovery has been
15   completed, I will entertain a summary judgment motion from
16   defendants on their affirmative defense.
17            At that point, the Court will have a more complete
18   record before it on which to resolve the issue.  As it stands
19   right now, it is simply not "clear from the face of the
20   complaint," as it must be, even when considered alongside the
21   additional authorities defendants offer in support of their
22   position, that defendants are entitled to dismiss as a matter
23   of law.
24            Before I explain my reasoning on the motion, I'd like
25   to address two threshold matters.  First, plaintiff has

submitted a proposed amended complaint, adding four paragraphs to clarify his alleged duties while employed by defendants. Because I find that amending the complaint would not cause undue delay or lead defendants to suffer prejudice*, see, e.g., Holmes v.Grubman* 568 F.3d 334, I construe the request as a motion for leave to amend, grant that motion, and treat the proposed amended complaint as the operative complaint in this action.

Second, defendants have submitted a Request for Judicial Notice and a Supplemental Request for Judicial Notice. These requests ask the Court to take judicial notice of seven documents – opinions from the American Bar Association and the District of Columbia Bar Association, a disciplinary complaint filed against a member of the Illinois Bar, a letter from the New York Department of Labor explaining the state's exemption for "bona fide professionals," a printout establishing the plaintiff in this case as a member in good standing of the New York State Bar, an opinion from the District of Columbia Court of Appeals Committee on Authorized Practice of Law, and a pleading in Los Angeles Superior Court, alleging that a law firm negligently failed to supervise contract attorneys. Plaintiff has not opposed the requests for judicial notice, and the Court grants these requests.

Filings before courts and agencies are appropriately subject to judicial notice, as long as the court considers only

the existence of those filings and not their truth.  *See, e.g., Kramer v. Time Warner*, 937 F.2d at 774.  Courts may also take judicial notice of an attorney's bar membership and status.  *See, e.g., Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, 2013 WL 5977440, at *14.  Finally, the existence and authenticity of the opinion letters by bar associations and government agencies "cannot reasonably be questioned," and therefore judicial notice is appropriate under Federal Rule of Evidence 201.  The Court may consider these judicially-noted facts when deciding motions to dismiss.  *See Mary Jo C. v. New York State and Local Retirement System*, 707 F.3d at 149.

Now to the merits:  The question of what constitutes the practice of law under 29 C.F.R. 541.304 appears to be one of first impression both in this circuit and elsewhere in federal courts.  Courts and other authorities have, however, more generally addressed the issue when deciding whether an individual was engaged in the unauthorized practice of law.

The New York Court of Appeals, for example, held that a disbarred attorney did not practice law when he published a journal article describing recent legal developments.  *See Matter of Rowe*, 80 N.Y.2d 336 at 341-42.  In so doing, the Court explained that "the practice of law involves the rendering of legal advice and opinions directed to particular clients," and that the journal article was not directed at a particular individual or group.  *See Id*.

1           Applying *Rowe's* definition of the practice of law, the
2   Court concluded in *A & E Television Networks, LLC v. Pivot*
3   *Point Entertainment, LLC*, that a paralegal who "manage[d]
4   discovery" on an attorney's behalf did not practice law.  *See*
5   2011 WL 6156985, at *1.  The Court explained that there were
6   "no allegations that the paralegal [w]as rendering legal advice
7   ... or otherwise holding himself out as a lawyer and acting in
8   an unsupervised manner."  *Id*.  A paralegal, however, was found
9   to have begun practicing law when she prepared an attachment
10  order without attorney supervision, because drafting the
11  document required her to use "independent judgment on a subject
12  with which she had insufficient knowledge."  *Sussman v. Grado*,
13  746 N.Y.S.2d, 548, 552 (N.Y. District Court of Nassau County,
14  2002), a New York court.
15          The District of Columbia Court of Appeals committee on
16  Authorized Practice of Law also addressed this issue in its
17  Opinion 1605, in which it concluded that contract attorneys
18  working in the District of Columbia could not practice law
19  unless they were members of the D.C. Bar.
20          In reaching this conclusion, the Opinion specifically
21  queried whether a contract attorney must be a member of the bar
22  if he or she performs document review that calls "for little or
23  no application legal knowledge, training or judgment, and that
24  is supervised by a member of the D.C. Bar."  (Request for
25  Judicial Notice, Ex. 2 at 5.)

1        The answer, the Committee explained, "generally
2   depends on whether the person is being held out, and billed
3   out, as a lawyer or as a paralegal."  (*Id.*)  A contract
4   attorney hired and billed as a lawyer "is generally engaged in
5   the practice of law," opinion noted, "and is certainly being
6   held out as authorized or competent to practice law."  (*Id.*)
7        It may be the case that the "practice of law" for
8   purposes of the FLSA, encompasses a broader range of activities
9   than does the same phrase when used in determining whether an
10  individual has engaged in the unauthorized practice of law.
11  These authorities are nonetheless instructive in determining
12  what constitutes the practice of law.
13       From them, the Court distills several factors that
14  bear on the definition, whether the individual at issue renders
15  legal advice to a particular client, *see Rowe,* 80 N.Y.2d at
16  342; whether he holds himself out as an attorney, *see* the
17  Request for Judicial Notice, exhibit two at page five, which is
18  Opinion 1605; and whether his duties require him to draw on
19  legal knowledge and judgment, *see, e.g.*, *Sussman*, 746 N.Y.S.2d
20  at 552.
21       Although at a later stage of the case, defendants may
22  well be able to establish that Henig's participation in the
23  document review "involve[d] the rendering of legal advice and
24  opinions directed to particular clients," that is not "clear
25  from the face of the complaint."  *See Staehr*, 547 F.3d, 425.

The complaint alleges that plaintiff's "entire responsibility while working for defendants consisted of looking at documents to see what search terms, if any, appeared in the documents and marking those documents into the categories predetermined by defendants." [Amended Complaint paragraph 33], a task he argues involved neither the rendering of advice nor of opinions.

Indisputably, because Henig was assigned to a particular project, his work related to a particular client. And document review is a function commonly performed by lawyers in the course of their representation of clients. Indeed, as defendants point out, courts routinely award attorneys' fees for time attorneys spend reviewing documents, *see, e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114, (9th Cir. 2008), and the consequences of incorrectly disclosing or withholding documents can be severe. Although defendants may ultimately succeed in proving that plaintiff acted as a lawyer as part of a team of lawyers that rendered advice and opinions to that client, as many junior lawyers and contract attorneys do, that cannot be determined at this time as a matter of law.

As to whether Henig held himself out as an attorney, it is true that the amended complaint alleges that plaintiff is an attorney, that "defendants employed attorneys for document review projects on a temporary short-term basis" and that Henig worked for defendants "in this capacity." But these

Case 1:13-cv-01432-RA-KNF   Document 56   Filed 01/29/14   Page 9 of 19        9
Dcbghenc

1   allegations leave unanswered a number of determinative
2   questions.  Did Quinn Emanuel specifically request attorneys
3   for the project, and did the firm communicate in some manner to
4   its clients that attorneys, as opposed to paralegals, would be
5   performing this task?  One imagines so but the amended
6   complaint does not say.  Was Henig held out, and billed out, as
7   an attorney?  Presumably, but one cannot be sure.  Did
8   defendants require him to be a member of the New York or other
9   Bar to participate in the project?  Most likely, but nowhere
10  does the amended complaint make "unequivocally" clear the
11  answer to this and the other questions.
12          Defendants argue that they "hire contract attorneys to
13  perform work that licensed attorneys do" because they count on
14  their judgment, their skill, and the fact that they're bound by
15  the ethical rules.  That may well be, and may ultimately help
16  lead the Court to conclude that Henig was indeed practicing
17  law, but the Court cannot resolve these questions by resort to
18  "common sense" or "judicial experience" as defendants urge.
19          Similarly, the Court cannot conclude at this stage
20  that Henig did or was expected to draw on his legal knowledge,
21  judgment or training to perform his responsibilities.  Indeed,
22  the amended complaint alleges just the opposite. Paragraph 34
23  of the amended complaint states that "plaintiff was not
24  required to, in fact, could not utilize any legal knowledge
25  and/or judgment in performing his job duties for defendants."

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    Such disputed matters cannot be definitively determined as a
2    matter of law on this motion to dismiss.
3              Accordingly, the Court denies defendants' motion to
4    dismiss the FLSA claim but intends to revisit this issue after
5    limited discovery on this issue.
6              Henig also files a complaint for overtime under New
7    York Labor Law.  Although New York law does not contain an
8    explicit exemption for lawyers engaged in the practice of law,
9    state law does expressly incorporate FLSA's exemptions.  See
10   New York Compilation of Codes, Rules, and Regulations, sections
11   142-2.2.
12             Defendants argue that state and federal law should be
13   interpreted interchangeably with respect to the exemption
14   categories, whereas plaintiff asserts that defendants must show
15   that he satisfied the general "professional exemption" criteria
16   under New York law.
17             Even assuming a defendants' interpretation of state
18   law is correct - and that New York law incorporates the
19   exemption for lawyers practicing law - plaintiff prevails in
20   this motion.  For the reasons I have just explained, it's not
21   implausible that Henig was engaged in something other than the
22   practice of law.
23             I'll also acknowledge the passing reference in Quinn
24   Emanuel's brief to the issue of whether it was Henig's
25   employer.  The firm's brief, however, devotes only two

1  sentences to this issue, cites no law or other authority, and
2  makes no other attempt to develop the argument.  I'm going to
3  decline to consider the argument at this stage of the case.
4  *See, e.g., Bektic-Marrero v. Goldberg*, 850 F.Supp.2d 418, 429
5  (S.D.N.Y. 2012), which declined to consider, on the motion to
6  dismiss, an argument raised in a single sentence in the
7  defendant's brief.
8         Finally, although I'm denying defendants' motion to
9  dismiss as I noted previously, I think it's best for the
10  parties to hold off on full discovery and motions for
11  collective and class certification.  Discovery at this stage
12  shall be limited to the issue of whether Henig was practicing
13  law.  This is a practice courts follow when a potentially
14  dispositive issue might be resolved through limited factual
15  development.  See, for instance, *Kautz v. Sugarman*
16  2011 WL 1330676, at *7, among other cases.
17         I appreciate that Quinn Emanuel has expressed concern
18  that discovery on this issue might raise issues of
19  attorney-client privilege.  Accordingly, by separate order that
20  will be filed later today, I will refer the case to Magistrate
21  Judge Fox to supervise discovery on this limited issue, then
22  we'll set a schedule for summary judgment briefing.
23         Why don't we talk now about scheduling?  How long do
24  you think it will take you to engage in the limited discovery
25  on issue of whether Henig was practicing law?

Dcbghenc

1         MR. KIRSCHENBAUM:  How does four months sound?
2         THE COURT:  Do you really need four months for this
3    very limited issue?  That's a normal amount of fact discovery
4    required and here, it's just on this very limited issue and not
5    on other issues.
6         MR. KIRSCHENBAUM:  Respectfully, the limited issue is
7    pretty much the entire case.  Once the exemption issue is
8    reached, the only remaining issue is damages.  Oh, I guess the
9    employer issue, too.
10        Three months; what does your Honor think?
11        THE COURT:  Why don't I ask the defendants, as well?
12        MR. GREENWALD:  I just want to go back.  The question
13   of timing goes back to the question of the attorney-client
14   privilege, which is not Quinn Emanuel's but belongs to our
15   client.
16        THE COURT:  I was noting you had raised the issue.
17        MR. GREENWALD:  I don't even understand how
18   Mr. Kirschenbaum gets to learn about the attorney-client
19   privilege information that belongs to Quinn Emanuel's clients.
20   We haven't put it at issue.
21        Mr. Henig is a licensed lawyer who cannot, under the
22   ethical rules, reveal attorney-client privilege information to
23   anyone without permission of the client.
24        I believe it's a threshold issue that makes it
25   difficult, if not impossible, to conduct discovery, except

Case 1:13-cv-01432-RA-KNF   Document 56   Filed 01/29/14   Page 13 of 19    13
Dcbghenc

1    perhaps ex parte, providing it to the Court like we might do
2    with a privilege log.
3              THE COURT:  That may be or there may be documents that
4    can be redacted that show the nature of the work without
5    disclosure.  But in any event, the reason I'm not deciding that
6    issue today and referring it to a magistrate is to assist you
7    in that process.
8              Back to timing, if your point is that this may take a
9    little bit longer because you'll need to resolve these issues,
10   I'll give you the time that you need to do so.
11             MR. GREENWALD:  We only contracted for his work for
12   six weeks.  It shouldn't take very long.  There should be a
13   very small universe of documents.  We don't think it will take
14   very long, other than to deal with the thorny legal issues.
15             THE COURT:  There may be depositions that are taken or
16   interrogatories or some way that you'll want to get into the
17   record why he was hired, whether clients knew that an attorney
18   was hired as opposed to someone else, if he was held out as a
19   lawyer.  There are other things that aren't particularly
20   complicated, frankly, that I assume you would want in the
21   record.
22             MR. GREENWALD:  Absolutely. We will produce them if
23   we can do so consistent without violating our client's
24   attorney-client privilege and work product rights that we have
25   to respect as a matter of our ethical duties.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Dcbghenc

1          THE COURT:  Right.

2          Back to timing, tell me.  If you need more time

3   because these issues are complicated, I will give you more

4   time.  As I said, I'm referring it to a magistrate.  I can also

5   leave it to the magistrate to figure out how much time is

6   required.

7          We don't have to set the briefing on summary judgment.

8   We don't have to set the briefing schedule now.  I can make the

9   reference to Magistrate Judge Fox.  When it's completed, he'll

10  let me know and we'll set up a prompt schedule to brief this.

11         MR. HUMMEL:  I would echo the comments from Quinn

12  Emanuel.  I think that's a fundamental issue and that's

13  something that I think in order to do the schedule, we really

14  need to understand and in what manner it will be produced and

15  how.  Then we can set the schedule.

16         I will be in favor of your most recent suggestion

17  which is, perhaps, refer it to the magistrate and then we can

18  decide the threshold issue, how that will be approached, and

19  then set the schedule.

20         THE COURT:  That's fine with me.  I won't set a

21  schedule today either for the timing to complete discovery on

22  this issue or the summary judgment briefing.  I'll refer it to

23  Magistrate Judge Fox.  You'll meet with him and sort out how

24  you're going to go about this process in light of the privilege

25  issues.

1              MR. KIRSCHENBAUM:  I was thinking we would serve

2     discovery requests, the defendants would object on the account

3     of attorney-client and/or work product, and then we would tee

4     up whatever the dispute is before Judge Fox.

5              I'm not sure how to tee up this issue before we even

6     have a pendent request that defendants have refused to answer.

7     My client, from our perspective, is prepared to be deposed and

8     testify and give testimony without violating attorney-client

9     privilege that I think could establish that he is nonexempt

10    under the FLSA.

11             To the extent the defendants think there is more

12    information or they don't want to respond to certain requests

13    and they want to bring up the attorney-client issue, they

14    should bring it up when there's a dispute.  Sitting here today,

15    there is no dispute at all.

16             THE COURT:  As I said, I'm going to refer this issue

17    to Magistrate Judge Fox.  If defendants want to have a

18    conference or telephone conference or something with Magistrate

19    Fox to talk about the issue before they respond, they'll make

20    that request.

21             If, instead, you serve your requests and their

22    response is based on their privilege concerns, it will be teed

23    up at that point, but I think you all can work this out.

24             MR. KIRSCHENBAUM:  Just to be clear, are we free to

25    serve discovery requests at this point?

1              THE COURT:  Do defendants have any objection to that?
2              MR. GREENWALD:  As long as it's limited to the issue
3     the Court limited it to, we have no objection.
4              MR. KIRSCHENBAUM:  Okay.
5              MR. HUMMEL:  Same here.
6              THE COURT:  I share that view.  You can share whatever
7     discovery requests and the like.  I think we should do this as
8     quickly as we can, again, leaving whatever time you need to
9     resolve the legal issues that are attendant to the discovery.
10    You should go ahead, and I'll issue a referral today and we'll
11    move from there.
12             MR. KIRSCHENBAUM:  Thank you.
13             MR. GREENWALD:  One final issue.
14             I do need to talk to my client and confer with
15    cocounsel, but we may seek permission to move for certification
16    on this issue because of the issues raised with discovery.
17             If there's a way we could get the circuit to rule on
18    the dispositive question of whether hiring a licensed lawyer
19    for a litigation project as alleged in the complaint is
20    dispositive as a matter of law, we may ask the Court to allow
21    us to do so.
22             THE COURT: As a matter of law, without any record
23    whatsoever indicating that, in fact, he was held out as a
24    lawyer and making it all clear what he was actually doing,
25    other than what the amended complaint alleges, that's what you

1    want to go to circuit?
2            MR. GREENWALD: I want to talk to my client. We
3    understand the Court's ruling.
4            THE COURT: All I have is the amended complaint. All
5    I have is that one document and the attendant documents that
6    you have asked me to take judicial notice of. I don't think
7    discovery in this case needs to be all that extensive.
8            I think I indicated here today a lot of the things
9    that would be very helpful to possible disposition of this
10   case, but in any event, you're permitted to make whatever
11   motion you'd like to make.
12           MR. GREENWALD: Thank you.
13           THE COURT: I'm not going to hold off discovery. I
14   want to proceed with discovery. I'm going to make the
15   reference today. You'll start to get that process going and
16   then I will entertain the motion and then get the summary
17   judgment briefs, hopefully sometime in the near future.
18           MR. GREENWALD: Thank you. It's not burden of costs;
19   it's the issue surrounding attorney-client privilege.
20           THE COURT: I understand your position. I understand
21   from your position why it's complicated.
22           I'm confident you'll be able to work some system out
23   where you can engage in this process in exchanging discovery
24   while preserving privilege, whether it's in redacted form or
25   otherwise.

1        Frankly, I would encourage you, as you are required to
2   do under the rules, to try and work it out yourself and think,
3   is there a way that we can respond to the discovery issues, tee
4   this up for the Court so the Court has the information it needs
5   in the record without infringing on privilege.
6        I think you should all start to talk about that.
7        MR. GREENWALD:  Yes.
8        MR. KIRSCHENBAUM:  One thing to note for the record.
9   I think it's important to point out the difference between
10  attorney-client privilege and work product privilege.
11       I don't see us looking for any attorney-client
12  communications at all.  In fact, I don't think my client ever
13  met with a client of Quinn Emanuel's.
14       THE COURT:  It may, in fact, just be work product.
15  I'm just basing it on what defense counsel noted, but it may
16  really be an issue of work product.
17       MR. GREENWALD:  If the question is how and why our
18  client wanted to hire lawyers for this task, that would be
19  attorney-client privilege information, communications between
20  us and our client about how to defend their case.
21       I anticipate that much of what we need to put into the
22  record to demonstrate that he was held out as a lawyer, he was
23  hired as a lawyer, as the Court pointed out, is attorney-client
24  privilege information, and that privilege belongs to the client
25  and not Quinn Emanuel.

Dcbghenc

1            THE COURT:  We'll deal with these issues as they come.
2    We are adjourned.
3            Thank you all.
4            (Adjourned)