# JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

| | |
|---|---|
| Charles Joseph | The Woolworth Building |
| D. Maimon Kirschenbaum | 233 Broadway, 5th Floor |
| Douglas Weiner | New York, NY 10279 |
| Matthew D. Kadushin | Phone (212) 688-5640 |
| Denise A. Schulman | Fax (212) 688-2548 |
| | www.jhllp.com |

Of Counsel:
Diane Hester
Michael DiChiara*
*Also admitted in NJ & MA

April 29, 2014

**VIA ECF**

Honorable Kevin N. Fox
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:    **Henig v. Quinn Emanuel Urquhart & Sullivan, LLP**
       **No. 13 Civ. 1432**

Dear Judge Fox:

We represent the Plaintiff in the above-captioned action. We write pursuant to the Court's Individual Practices and Local Civil Rule 37.2 to request an informal conference regarding outstanding discovery disputes relating to Defendant Quinn Emanuel Urquhart & Sullivan, LLP's ("Quinn") responses to Plaintiff's discovery requests.[1] The parties have conferred about the disputes described below.

In this wage and hour action, Plaintiff, a former contract attorney who worked on a document review project for Quinn (the "Project"), alleges that Defendants violated that Fair Labor Standards Act ("FLSA") and New York law by failing to pay him an overtime premium for overtime hours worked. As Plaintiff's eligibility for overtime under the FLSA hinges on whether or not he was engaged in the practice of law, 29 C.F.R. § 541.304, Judge Abrams has ordered limited discovery relating to whether Plaintiff was engaged in the practice of law.

---

[1] Attached as Exhibit 1 are Plaintiff's interrogatories and Quinn's responses discussed herein. Attached hereto as Exhibit 2 are Plaintiff's requests for production and Quinn's responses discussed herein. Attached hereto as Exhibit 3 are excerpts from the transcript of the December 11, 2013 hearing in this action before Judge Abrams.

## I.     Disputes related to the scope of discovery

Despite Judge Abram's clear instruction that discover include all matters relating to whether Plaintiff engaged in the practice of law, Quinn has refused to respond to a number of Plaintiff's discovery requests, contending incorrectly that they do not relate to the question of whether Plaintiff engaged in the practice of law.  Instead of producing all documents and information that relate to the question of whether Plaintiff was engaged in the practice of law, Quinn has simply produced the documents that it believes support its own position that Plaintiff was engaged in the practice of law.  Quinn's discovery stonewalling is particularly egregious as Quinn insisted on setting a discovery deadline of June 13, 2014 while also producing voluminous documents but excluding documents responsive to a large number of Plaintiff's requests.

In denying Defendants' motions to dismiss, Judge Abrams set forth certain factors that are relevant to determining whether Plaintiff engaged in the practice of law: "whether the individual at issue renders legal advice to a particular client; whether he holds himself out as an attorney; and whether his duties require him to draw on legal knowledge and judgment."  (Ex. 3, 7:14-20.)  For the reasons set forth below, Plaintiff's discovery requests are clearly within the scope of this phase of discovery and are relevant to determining whether Plaintiff was engaged in the practice of law.

### Interrogatories Nos. 1, 3; Request for Production No. 47

Interrogatory 1 and this request for production seeks the identities of and documents relating to Quinn employees who interviewed or met with individuals seeking to work on the Project.  Interrogatory 3 seeks the identities of all individuals who supervised individuals who worked on the Project.  Quinn has refused to identify and produce documents relating to Quinn employees who interviewed the Project's applicants, including Henig.  Quinn has also taken the position that Plaintiff is not entitled to discovery concerning the interviewers of applicants other than himself.  This is plainly improper.  Quinn employees who interviewed applicants (including but not limited to Plaintiff) are likely to have information concerning the qualifications and requirements for Plaintiff's position, as well as the job duties of that position.  This information bears directly on whether Plaintiff was engaged in the practice of law.

Quinn's response to interrogatory 3 is incomplete, as it has not identified all of the Project's supervisors.  Quinn acknowledges in its response that second-level reviewers supervised first-level reviewers (of which Plaintiff was one), and e-mails produced by Quinn bear this out.  Yet Quinn inexplicably refuses to identify the second-level reviewers.  *See* Local Civ. R. 26.3(c)(3) (defining "identify").  Accordingly, Quinn should supplement its response to interrogatory 3 by identifying all second-level reviewers.

### Interrogatories Nos. 4, 6; Requests for Production Nos. 16, 27

These interrogatories and requests for production seek documents and information relating to the decision to use attorneys to perform document review for the Project.  While Quinn has produced an e-mail indicating that contract attorneys were less expensive than associates, it has not identified the people involved in the decision to use contract attorneys on

the project, and it has produced no e-mails or other documents concerning why attorneys rather than non-attorneys were used on the Project. Instead, Quinn has objects to these requests as being outside the scope of discovery. Given the nature of Quinn's response, it appears that additional responsive documents do exist but are being withheld.

These documents and information are relevant to the job requirements of Plaintiff's position, including whether Plaintiff's job required the use of legal knowledge and judgment, and whether he was held out as an attorney. Quinn has produced Plaintiff's initial hire documents, including his employment contract and conflicts check, which Quinn maintains are sufficient to that attorneys were required for the project on which Plaintiff worked. However, these documents do not demonstrate that only an attorney could perform Plaintiff's job, and they provide no information about the reason why Quinn used attorneys for the project. Moreover, Quinn's self-serving determination of which documents suffice to prove Quinn's case is not the standard for which documents it must produce in discovery. Accordingly, Quinn's response is deficient.

**Requests for Production Nos. 20, 23**

These requests for production seek documents relating to billing arrangements between Quinn and its client for Plaintiff's services. The only responsive documents Quinn has produced are highly redacted invoices to its client (the impropriety of these redactions is discussed *infra*) and an e-mail to Quinn's client stating the rate at which Quinn will bill its client for contract attorneys' work (the rate stated in the e-mail does not match the billing rate for Plaintiff on Quinn's invoices). Quinn has not produced e-mails or other communications relating to the final rate at which Quinn billed its client for Plaintiff's work. Quinn does not deny that these documents; rather, Quinn insists that it need not produce them.

As Judge Abrams explained in denying Defendants' motions to dismiss, the rates billed and paid for Plaintiff's services are relevant to whether he was held out as an attorney. (Ex. 3, 8:25-9:2, 9:6-7.) Similarly, decisions about and communications concerning such rates will reflect the reasoning behind such rates and are therefore also relevant. Accordingly, these requests are within the scope of discovery.

**Interrogatory No. 9; Requests for Production Nos. 22, 41**

This interrogatory and these requests for production seek information and documents relating to the decision to pay Plaintiff (and other contract attorneys) for overtime at their regular rate of pay. Quinn has not produced any responsive documents or stated that no such documents exist. Instead, Quinn contends that its decision not to pay an overtime premium is not relevant to the question of whether Plaintiff engaged in the practice of law. However, Quinn's apparent determination that Plaintiff (and other contact attorneys) was exempt from the FLSA's overtime requirement was necessarily based on the conclusion that Plaintiff was engaged in the practice of law. As such, Quinn's decision not to pay Plaintiff an overtime premium is relevant to determining whether Plaintiff was engaged in the practice of law.

3

**Requests for Production Nos. 6, 11, 28**

These requests for production seek documents and communications relating to the relationship between Quinn and Defendant Document Technologies, LLC ("DTI") with respect to the Project. Quinn has not produced contracts, e-mails between Quinn and DTI, or other responsive documents, or stated that no such documents exist. Documents and communications about the Project exchanged between Quinn and DTI likely reflect, *inter alia*, the nature of Plaintiff's work, the type of supervision he was subject to, and job requirements, all of which are relevant to whether Plaintiff was engaged in the practice of law. Contracts and other documents setting forth the relationship between Quinn and DTI with respect to the Project likely describe the nature of the Project and set forth standards applicable to the Project that bear on Plaintiff's duties. Moreover, Quinn's contention that Plaintiff is not entitled to responsive documents regarding individuals other than Plaintiff is wrong. Information about the Project as a whole, Plaintiff's position in general, and the hierarchy of the staff on the Project is certainly relevant to understanding Plaintiff's position and Quinn's expectations and requirements for that position.

**Request for Production No. 17**

This request seeks documents relating to Quinn's or its client's decision to use DTI to procure contract attorneys for the Project. Quinn has not produced any responsive documents, such as e-mails relating to the decision to use DTI. These documents likely relate to whether Plaintiff was held out as an attorney and whether Quinn's client was aware that attorneys were performing document review on the Project. Responsive documents will likely also reflect the nature of the work Plaintiff was hired to do, inasmuch as Quinn's decision to use DTI as opposed to another company would reflect the kind of work the Project entailed and why DTI was well-suited to perform it. Moreover, the reason why Quinn used DTI for the Project may well bear on whether Plaintiff was engaged in the practice of law. For example, if the primary reason Quinn retained DTI was based on low cost rather than quality of contract attorneys, that suggests legal knowledge and training were not critical for adequate completion of the Project.

**Requests for Production Nos. 25, 26**

These requests for production seek documents relating to the staffing of the Project, such as e-mails and other communications between Quinn and DTI regarding the requirements for contract attorneys and e-mails and other communications between Quinn and its client about the need for contract attorneys. Quinn has produced some e-mail communications with its client concerning the retention of contract attorneys. However, because Quinn has taken that position that Plaintiff is not entitled to these documents, rather than asserting that no additional responsive documents exist, it appears that Quinn has not produced all responsive documents. To be sure, Quinn has not produced communications with DTI regarding the Project's staffing.

As these documents are likely to reflect whether document reviewers were required to be attorneys, and if so, why, these documents are clearly relevant to determining whether Plaintiff was engaged in the practice of law. Quinn contends that its production of Plaintiff's application materials, conflict check, employment contract, and other new hire documents are an adequate response to these Requests, as they are "sufficient to show the requirements for plaintiff's

position." However, at most these documents show that Plaintiff is an attorney (a fact not in dispute). They do not show why Quinn did or did not want to use attorneys to staff the Project or whether the work Plaintiff was hired to do could not have been done without a legal education. These issues are highly relevant to determining whether Plaintiff was engaged in the practice of law. In addition, Quinn refuses to produce documents relating to individuals other than Plaintiff. Again, documents relating to the staffing of the Project in general are relevant to understanding Plaintiff's role, and as such, they are within the scope of discovery.

**Requests for Production Nos. 29, 30**

These requests seek documents relating to the use of non-attorneys to work on the Project. Quinn contends that these documents are outside the scope of discovery because they pertain to individuals other than Plaintiff. This argument is specious. If non-attorneys worked on the project – either performing the same work as Plaintiff; performing second level review, privilege review, or quality control; or exercising supervisory authority over Plaintiff and/or others in Plaintiff's position – this would tend to show that a legal education and/or license was not necessary for Plaintiff's work.

In fact, based on e-mails produced by Quinn, it appears that Plaintiff was supervised by at least one non-attorney, Michael Belgraier. E-mails produced by Quinn clearly indicate that Mr. Belgraier supervised Plaintiff and other contract attorneys in 2012. It also appears that Mr. Belgraier may have been a second level reviewer (Plaintiff was a first level reviewer). In addition, Mr. Belgraier identifies himself in his e-mails as "J.D.," rather than as "Esq." or "attorney," and New York's attorney registry indicates that he was not admitted to practice law until 2014. Thus, it seems clear that non-attorneys worked on the Project, and all documents responsive to these requests should be produced.

**Request for Production No. 31**

This request seeks documents concerning the jurisdiction(s) in which Plaintiff and other attorneys working on the Project were required to be admitted. Such documents are relevant to determining whether Plaintiff's position required that he be authorized to practice law in a particular jurisdiction. Quinn's contention that Plaintiff is not entitled to documents relating to the licensure of other individuals working on the Project is simply wrong. If document reviewers were not required to be admitted to a certain jurisdiction (or any jurisdiction), that would tend to show that Plaintiff's work could be done by non-attorneys and, therefore, was not the practice of law. As such, this request is within the scope of discovery.

**Requests for Production Nos. 35, 37, 38, 40**

These requests seek documents relating to Defendant's supervision of Plaintiff and the quality control and review of the work of Plaintiff and other first level reviewers. Quinn has produced some e-mails relating to Plaintiff's productivity, but otherwise has not produced any responsive documents. The requested documents are highly relevant. The more Plaintiff's work was subject to review by others, the less likely it is that he exercised legal judgment and provided legal advice, both of which are factors in determining whether Plaintiff was engaged in the

practice of law.  Documents relating to plaintiff's supervisors and their qualifications/licensure are relevant to determining whether Plaintiff was supervised as an attorney is supervised or as a non-attorney is supervised. Accordingly, these requests seek documents relevant to whether Plaintiff was engaged in the practice of law.

**Request for Production No. 50**

This request for production seeks all documents not otherwise requested relating to the applicability of the professional exemption to Plaintiff.  As the FLSA's professional exemption applies to Plaintiff only if he was engaged in the practice of law, this request is self-evidently within the scope of discovery, and Quinn's argument to the contrary is absurd.

## II.    Other issues

**Billing records**

Request for production 21 seeks billing records for Plaintiff's work on the Project.  While Quinn did produce billing records, they were entirely redacted except for Plaintiff's entries. Quinn contends that redaction is proper because Plaintiff is not entitled to discovery relating to anyone other than himself.  However, the billing entries for individuals other than Plaintiff provide important context. In determining whether Plaintiff was held out as an attorney, it is certainly relevant to know whether Quinn billed its client more for its own associates or other attorneys than it did for Plaintiff.  Similarly, if Quinn billed its client for Plaintiff at a paralegal rate, that would tend to show that Plaintiff was not held out as an attorney.  The unredacted billing records are necessary to make these determinations.

**Retainer agreement**

The retainer agreement between Quinn and FHFA is responsive to requests for production 21 (documents relating to billing) and 23 (documents relating to Quinn's decision regarding what to charge its client).  Quinn contends that the retainer agreement does not mention plaintiff at all and therefore does not provide information relating to the manner in which plaintiff was held out.  While Plaintiff understands that he is not mentioned by name in Quinn's retainer agreement, presumably there is some provision in the retainer agreement for the retention and billing of contract workers.  As Quinn did in fact bill its client for Plaintiff's work, there must have been some agreement with Quinn's client about what the client would be charged (*e.g.*, whether Quinn would bill the client an hourly rate for contract attorneys or whether the client would pay for contract attorneys as an expense).  Accordingly, the retainer agreement is relevant and should be produced.

We thank the Court for its attention to this matter.

6

Respectfully submitted,

D. Maimon Kirschenbaum

cc:    Marc Greenwald, Esq. (via ECF)
       Zachary Hummel, Esq. (via ECF)