# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CASE NO. 13-CV-1432

- - - - - - - - - - - - - - - - - - -x

WILLIAM HENIG, on behalf of himself: and all others similarly situated, :

Plaintiff, :

- against - :

QUINN EMANUEL URQUHART & SULLIVAN, : LLP and PROVIDUS NEW YORK, LLC, :

Defendants. :

- - - - - - - - - - - - - - - - - - -x

233 Broadway
New York, New York
July 10, 2014
10:00 a.m.

PRIVILEGED - CONFIDENTIAL
SUBJECT PROTECTIVE ORDER

DEPOSITION of TODD RIEGLER, ESQ., held at the above-mentioned time and place, before Randi Friedman, a Registered Professional Reporter and Notary Public within and for the State of New York.

RIEGLER - PRIVILEGED - CONFIDENTIAL

BY MS. SCHULMAN:

Q Are you familiar with the contents of the training materials and guidelines provided to contract attorneys?

A No.

Q Who would be?

A Andrew Kutcher.

Q Let's just back up a second. You said you manage the contract attorney staff in Quinn Emanuel's New York office.

Is that contract attorneys directly employed by Quinn Emanuel?

A Yes.

Q Are they also sometimes called staff attorneys?

A They can be referred to as staff attorneys.

Q And then there are also for projects, temporary contract attorneys hired through agencies?

A Correct.

Q And both Quinn contract attorneys and temporary contract attorneys worked on the [redacted] project?

Q Under Review Setup No. 1.

A There is another question in there. When I say that, "Will QE be billed resulting in a standard markup to 320," by saying "standard markup," we can deviate from that as well.

Q Okay. But his response is that there should be a standard 320-dollar markup?

A That's what the response says.

Q Do you know what the client was ultimately billed?

A I do.

Q What was that?

A I'm sorry. I don't. I don't recall what contract attorneys were billed at in 2011.

Q Okay. Do you recall what they were billed at in 2012?

A Yes.

Q What was that?

A $68.50.

Q Do you know why they were billed at $68.50 as opposed to 320?

MR. GREENWALD: Objection. This goes so far beyond the allowable scope of discovery.

Be admitted to a Bar in some U.S. jurisdiction. Experience in structured finance litigation was preferred, but not necessary. That's what I recall at this time.

Q Did you come up with those criteria or did someone else?

A I don't recall.

Q You have a question here about whether Mr. Goldstein wanted to interview candidates.

What was the answer to that?

A I don't recall.

Q Do you know whether Quinn interviewed candidates for the [redacted] document review project?

A We did interview.

Q Who did the interviews?

A Initially, the case team. And eventually members of the second level review team. And the case team may have assisted them as well.

Q At what point did the members of the second level review team start doing interviews?

A I don't recall.

Q In August 2012, were second level review team members conducting interviews?

RIEGLER - PRIVILEGED - CONFIDENTIAL

A Yes.

Q And were they given at that time, any guidelines about what to look for in the interviews?

A Yes.

Q What were those?

A I don't recall.

Q Is there someone who would?

A Possibly.

Q Who might know?

A The second level review team.

Q The people who actually did the interviews?

A Correct.

Q Who gave them the guidelines to use for interviews?

A It could have been me. I just don't recall.

Q What did you mean when you said, "Reviewers are easily replaced, if necessary"?

A Where are we looking?

Q In the same section as the question about interviews.

A It means that if a contract attorney

RIEGLER - PRIVILEGED - CONFIDENTIAL

here on the last page?

A Yes.

Q Do you recall having any communications with Providus about his hire?

A Specifically Mr. Henig?

Q Yes.

A No.

Q Were all of the Quinn Emanuel staff attorneys who worked on the [redacted] project, admitted attorneys?

A I'm sorry; could you repeat the question?

(Whereupon the reporter read back the requested portion of the record.)

MR. GREENWALD: I'll object. This is so far beyond whether or not Mr. Henig was practicing law, which is the limit set by Judge Abrams.

BY MS. SCHULMAN:

Q You can answer.

A Okay. One more time. I want to make sure I give the right answer.

(Whereupon the reporter read back the requested portion of the record.)

RIEGLER - PRIVILEGED - CONFIDENTIAL

THE WITNESS: No.

BY MS. SCHULMAN:

Q How many were not admitted attorneys?

A Two.

Q One of them was Michael Belgraier?

A Yes.

Q Who was the other one?

A Rakan Nazer.

Q Were they law school graduates?

A Yes. Yes.

Q When they were hired, had they passed the Bar?

A I cannot answer with regard to Rakan Nazer. Yes -- I'm sorry, wait. Repeat that question again.

Q Had they passed the Bar exam?

A No.

Q Neither of them?

A I can't answer with regard to Rakan Nazer.

Q But Mr. Belgraier had not?

A Yes.

Q Do you know why the QE staff attorneys were billed at 250 per hour, and the contract

RIEGLER - PRIVILEGED - CONFIDENTIAL

Q Did the second level reviewers supervise the first level reviewers?

MR. GREENWALD: Objection.

THE WITNESS: Could you be more specific?

BY MS. SCHULMAN:

Q Did they give any instructions to the first level reviewers?

A Could you be more specific?

Q Any work instructions.

A I don't know what instructions the second level review team may have given or may not have given to the reviewers.

Q If a first level reviewer had a question about how to code a document, were they supposed to ask a second level reviewer about that?

A Yes.

Q And then were they supposed to follow whatever answer the second level reviewer gave them?

A Yes.

Q Was there a second level reviewer in every room where first level reviewers were

RIEGLER - PRIVILEGED - CONFIDENTIAL

working?

A Yes.

Q Was there more than one in each room or just one?

A In one room -- in at least one room, there was more than one.

Q And what was the purpose of having a second level reviewer -- at least one second level reviewer in each room that the first level reviewers were in?

A To be on hand. To troubleshoot technology issues. To answer questions and funnel questions as needed to the case team.

Q So if a first level reviewer asked a second level reviewer a question that the second level reviewer did not know the answer to, the second level reviewer would forward it to the associates or partners on the case?

A Yes.

Q Was there a privilege review after the second level review?

MR. GREENWALD: Objection.

THE WITNESS: Yes.