UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM HENIG, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>-against-<br><br>QUINN EMANUEL URQUHART & SULLIVAN, LLP and PROVIDUS NEW YORK, LLC,<br><br>      Defendants. | 13 CIV 1432 (RA)<br><br>**DEFENDANT QUINN EMANUEL URQUHART & SULLIVAN'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

Peter E. Calamari
Marc L. Greenwald
Elinor C. Sutton
Samuel C. Kitchens

51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel:  212-849-7000
Facsimile:  212-849-7100

*Attorneys for Defendant Quinn Emanuel Urquhart & Sullivan, LLP*

October 8, 2015

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

I. MR. HENIG DOES NOT DISPUTE THAT HIS POSITION SATISFIED ALL THE CRITERIA FOR ENGAGING IN THE PRACTICE OF LAW ................................2

    A. The Written and Oral Instructions Provided to Mr. Henig Establish That He Was Required To Use His Own Legal Knowledge and Judgment in Determining Whether Documents Were Responsive ...............................................3

    B. The Undisputed Written Privilege Instructions Establish That Mr. Henig Also Was Required To Use His Own Legal Knowledge and Judgment in Determining Whether Documents Were Privileged .................................................4

    C. Henig's Alleged Failure To Understand or Follow the Written Responsiveness and Privilege Instructions Does Not Alter the Fact That His Position Required the Exercise of Legal Knowledge and Judgment. ...............5

II. NONE OF THE ADDITIONAL ARGUMENTS RAISED BY PLAINTIFF ESTABLISHES ANY MATERIAL DISPUTE AS TO THE EXEMPT STATUS OF HIS POSITION.................................................................................................................7

    A. Plaintiff Invents a False Distinction Between Legal Judgment and "Human" Judgment....................................................................................................7

    B. The Fact That Mr. Henig's Work Was Supervised and/or Re-Reviewed by Others Does Not Render His Position Non-Exempt................................................8

    C. Mr. Henig's Time Sheet Entries and Billable Rate Do Not Alter the Fact that He Was Engaged in the Practice of Law ..........................................................9

III. CONCLUSION..........................................................................................................10

i

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Banxcorp v. Costco Wholesale Corp.*,
    978 F. Supp. 2d 280 (S.D.N.Y. 2013)..................................................................................5

*Haas v. Verizon N.Y., Inc.*,
    No. 13 Civ. 8130, 2015 U.S. Dist. LEXIS 107842 (S.D.N.Y., August 13, 2015)....................6

*Indergit v. Rite Aid Corp.*,
    293 F.R.D. 632 (S.D.N.Y. 2013) ............................................................................................6

*Lola v. Skadden, Arps, Slate, Meagher & Flom LLP*,
    No. 14-3845-cv, 2015 WL 4476828 (2d Cir., July 23, 2015).................................................2

*Mack v. U.S.*,
    814 F.2d 120 (2d Cir. 1987)...................................................................................................5

*Pippins v. KPMG LLP*,
    921 F. Supp. 2d 26 (S.D.N.Y. 2012), *aff'd.*, 759 F.3d 235 (2d Cir. 2014) ..............................8

### **Other Authorities**

N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Opinion 557 (1984)..............................................7

ABA Comm. on Ethics and Prof'l Responsibility, Formal Opinion 328 (1972)...........................7

N.Y. Cnty. Lawyers Assoc. Comm. on Prof'l Ethics, Opinion 682 (1990) ...................................9

**Introduction**

Quinn Emanuel established in its Opening Brief that there is no material dispute that Mr. Henig—an attorney licensed to practice in New York who advertised himself as an "Attorney" and his experience at Quinn Emanuel as "Legal Experience"—was engaged in the practice of law and therefore an exempt employee during his work on the Document Review Project for Quinn Emanuel's client.  Mr. Henig's Opposition Brief does not dispute the applicable legal standard set forth in Quinn Emanuel's motion briefing, nor does he raise any genuine dispute as to any material fact establishing his status as an exempt employee not entitled to overtime pay.

Plaintiff, in fact, has admitted the satisfaction of the three factors this Court has established that determine what constitutes the "practice of law" sufficient to establish exemption under the FLSA and the NYLL:  *First*, Plaintiff admits that he rendered legal advice to a particular client when he made determinations on behalf of Quinn Emanuel's client that specific documents should be produced or withheld in litigation discovery; *second*, he also admits that he held himself out as an attorney—before, during, and after his employment on the Document Review Project; and *finally*, he admits that the job duties of a First Level Review attorney, as described in the written materials and oral instructions that were indisputably provided to him, required First Level Review attorneys to draw on legal knowledge and judgment when determining whether particular documents were responsive, privileged and/or confidential.[1]

The sole basis for Plaintiff's continued opposition to summary judgment against him is essentially that he claims to have done such a poor job as a First Level Review attorney—at all times failing to understand and/or follow the written instructions requiring him to exercise his

---

[1]  Mr. Henig admits, albeit often with further responses, the facts set forth in more than 100 of the 129 paragraphs of Quinn Emanuel's SOFF.  *See* Plaintiff's Counter-Statement of Material Facts Pursuant to Local Rule 56.1 ("PCS") at ¶¶ 1-39; 42, 44-46, 50, 53-58, 62-71, 73-76, 78, 83, 85-86, 88-94, 96-115,  117-127, 129.

legal judgment—that his personal work performance did not rise to the level of an exempt attorney.  But an employee cannot accept an exempt position and convert it to non-exempt simply by failing to exercise the necessary knowledge and judgment that the position requires.  There is no legitimate dispute that Mr. Henig's position satisfied all of the requirements for exemption under both the FLSA and the NYLL, and the Court should grant summary judgment dismissing his claims.

I. **MR. HENIG DOES NOT DISPUTE THAT HIS POSITION SATISFIED ALL THE CRITERIA FOR ENGAGING IN THE PRACTICE OF LAW**

As noted above, this Court has identified the following three factors that bear on what constitutes the practice of law: (1) "whether the individual at issue renders legal advice to a particular client," (2) "whether he holds himself out as an attorney," and (3) "whether his duties require him to draw on legal knowledge and judgment."  Dkt. 45 at 7:13-20 (December 11, 2013 Hearing Transcript).  In his Opposition Brief, Plaintiff concedes the satisfaction of the first two factors and acknowledges that, "[u]nder the circumstances of this case, the crucial factor is the third one—whether Plaintiff exercised legal judgment that required him to draw on legal knowledge."  Opp. Br. at 10.

Faced with the undisputed evidence, including his own testimony, that his position as a First Level Review attorney *required* him to exercise legal knowledge and judgment, Mr. Henig incorrectly recasts the issue to argue that there remains a material dispute as to "whether Plaintiff exercised *sufficient* legal judgment to have been engaged in the practice of law."  (Opp. Br. at 11; emphasis added).  But the applicable legal standard asks only whether the employee was required to exercise "some" legal judgment, and the individual employee's exercise of legal judgment need not rise to a specific level of "sufficiency" before the practice of law test is satisfied.  See *Lola v. Skadden, Arps, Slate, Meagher & Flom LLP*, No. 14-3845-cv, 2015 WL

4476828, at *6 (2d Cir., July 23, 2015), (noting that New York "consider[s] the exercise of *some* legal judgment an essential element of the practice of law." (emphasis added)). Regardless, under any articulation of the test, Mr. Henig's position as a First Level Review attorney required him to exercise significant and substantial legal knowledge and judgment, and he was therefore engaging in the practice of law as an exempt employee.

>   A. **The Written and Oral Instructions Provided to Mr. Henig Establish That He Was Required To Use His Own Legal Knowledge and Judgment in Determining Whether Documents Were Responsive**

Mr. Henig admits in his opposition briefing that he was given detailed written "Guidelines," "Protocols" and additional "Guidance" at various times during the Document Review Project designed to "assist the First Level Reviewers with their Responsiveness calls." PCS ¶ 54; *see also* PCS ¶¶ 35-37, 42, 52, 55-56, 67. In his Counterstatement of Material Facts, Mr. Henig admits the content and purpose of these written instructions and tables, which *inter alia*, (1) explained the potential responsiveness of certain types of documents in terms of their complex subject matter, not the presence or absence of simple keywords; (2) stated that documents meeting certain criteria "may" be responsive or would "generally" be responsive, thereby leaving the ultimate responsiveness determination to the judgment and discretion of the First Level Review attorney; and (3) specifically cautioned reviewers "***[a]s always, you have to look for full context***." PCS ¶¶ 54-56, ¶¶ 98-99 (emphasis added).

This undisputed documentary evidence, coupled with Mr. Henig's admissions as to its purpose and contents, entirely rebuts the unsupported argument in Mr. Henig's Opposition Brief that "Quinn Emanuel instructed Plaintiff to tag documents responsive or not responsive based on the presence or absence of the terms or names included in the many lists and charts Quinn Emanuel provided. Locating the presence or absence of these terms and names required no legal judgment whatsoever, but merely the ability to read." Opp. Br. at 13. There simply is no dispute

3

of material fact that Mr. Henig's position required him to exercise his own legal knowledge and judgment when determining whether documents were responsive.

### B. The Undisputed Written Privilege Instructions Establish That Mr. Henig Also Was Required To Use His Own Legal Knowledge and Judgment in Determining Whether Documents Were Privileged

Mr. Henig and his fellow First Level Review attorneys also received detailed written instructions as to how to determine whether particular documents were subject to the attorney-client privilege as well as the attorney work-product and other protections. Plaintiff's opposition briefing establishes as a matter of undisputed fact that he was required to use legal knowledge and judgment in determining whether documents were privileged or otherwise protected. Among other admissions, Mr. Henig unequivocally admits in his Counterstatement of Material Facts that:

- "[H]e understood that one of his jobs was to determine whether or not the documents he was reviewing were privileged." PCS ¶ 61 (citing Mr. Henig's deposition testimony at 92:25-93:19).

- "The training materials [received by Mr. Henig] noted that although the Document Review would be relying on privileged search terms, those search terms 'are not going to capture every privileged document,' and that the reviewers should 'not assume that because a document lacks a privileged search term, it is not privileged.'" PCS ¶ 62.

- "The training materials also stated that '*[p]rivilege can be tricky and there are a lot of gray areas.*'" PCS ¶ 63 (emphasis added).

- "Certain of the revised guidelines included the statement that the First Level Reviewers were to '*[u]se discretion marking documents Privileged*.'" PCS ¶ 67 (emphasis added).

- "Mr. Henig acknowledged that using discretion involves '*using your own individual judgment*.'" PCS ¶ 68 (citing Henig Dep. Tr. at 160:5-161:15; emphasis added).

- "[T]he training materials included a statement of the legal standards for determining whether attorney-client privilege or work product immunity applied." PCS ¶ 72.

Mr. Henig does not contend that he was told to ignore any of the privilege-related training materials or that he was given any subsequent oral instructions that contradicted any of these specific instructions. In fact, Mr. Henig testified that he "always followed" the privilege

4

review instructions to the best of his ability. PCS ¶ 119 (citing Henig Dep. Tr. at 99:15-16). There thus is no material dispute that the privilege review aspect of Mr. Henig's position required the exercise of legal knowledge and judgment.

### C. Henig's Alleged Failure To Understand or Follow the Written Responsiveness and Privilege Instructions Does Not Alter the Fact That His Position Required the Exercise of Legal Knowledge and Judgment.

Mr. Henig's Opposition Brief also fails to raise any legitimate dispute that he was instructed to use and follow these written instructions, and that he actually did so in his performance of his document review duties. While Mr. Henig now argues without support that he was "not instructed to review and follow" the written materials provided to him, Opp. at 5, his own testimony and written admissions prove the contrary. Mr. Henig testified under oath that "they gave us some ***training materials and guide books which we were to reference during our review***..." Ex. C at 57:15-58:6 (emphasis added). And he further admitted that he used "[a]ll the tables that were given to use, of which there were many" as a "bible" for his review process. PCS ¶ 37. The Court should reject Plaintiff's attempt to obfuscate the undisputed record of his receipt of and adherence to the written document review instructions. *See, e.g., Mack v. U.S.* 814 F.2d 120 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.") (citations omitted); *Banxcorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 299 (S.D.N.Y. 2013)(a "self-serving contradictory affidavit fails to raise a triable issue of fact when it conflicts with documentary evidence.").

Similarly, Mr. Henig cannot argue his way out of the undisputed nature of his job duties by now claiming that he did not understand or was unable to follow the written First Level Review instructions. *See, e.g.,* Opp. at 15 ("Plaintiff . . . did not exercise legal discretion in applying the responsiveness and privilege tags, and . . . his responsibilities as a First Level

5

Reviewer consisted of tagging documents for responsiveness and privilege in [a] mechanical manner.") *see also* PCS ¶¶ 111, 112, 157.  Notably, while Mr. Henig was employed on the Document Review Project, he never told anyone that he did not understand the case-related materials that he was provided or that he was electing not to apply them.  PCS ¶ 94.  Regardless, Mr. Henig's individualized failure to comprehend or perform his undisputed job duties is irrelevant to the question of whether his position was exempt or non-exempt.  An individual employee should not be allowed to accept a position that is exempt from overtime requirements and then claim, after-the-fact, that he performed the job so poorly that he somehow converted the position from exempt into non-exempt, requiring his employer to pay him for overtime.

      Finally, the Court should reject Mr. Henig's argument that his alleged failure to perform his job according to its written requirements somehow renders them meaningless as to the scope and nature of his position.  Mr. Henig argues that "written descriptions are not dispositive of Plaintiff's duties . . . [rather] [i]t is Plaintiff's *actual* job duties, not any written descriptions, that determine whether he performed exempt work."  Opp. at 15 (citing *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632 (S.D.N.Y. 2013) (concerning primary duties of Rite Aid store managers); *Haas v. Verizon N.Y., Inc.*, No. 13 Civ. 8130, 2015 U.S. Dist. LEXIS 107842 (S.D.N.Y., August 13, 2015) (concerning primary duties of Verizon "Local Managers")).  But unlike the *Indergit* and *Haas* cases that Mr. Henig cites for this proposition, Mr. Henig has admitted that the written materials that defined his duties were provided to him and that he was required to (and at times did) follow their instructions.  *See* Ex. C at 57:15-58:6; PCS ¶ 37.  The detailed written instructions that set forth Mr. Henig's duties are very different than the detached self-serving job descriptions in *Indergit* and *Haas* and they establish beyond dispute that Mr. Henig's position required him to engage in the practice of law.

6

II.     **NONE OF THE ADDITIONAL ARGUMENTS RAISED BY PLAINTIFF ESTABLISHES ANY MATERIAL DISPUTE AS TO THE EXEMPT STATUS OF HIS POSITION**

Mr. Henig's opposition raises a series of disconnected issues that he argues should be viewed in the "totality" to undermine the undisputed evidence that he was engaged in the practice of law. *See* Opp. at 13-20. None of these arguments establishes any dispute as to the exempt status of Mr. Henig's position as a First Level Review attorney.

   A.    **Plaintiff Invents a False Distinction Between Legal Judgment and "Human" Judgment.**

Unable to dispute that his job position required him to exercise his legal judgment, Mr. Henig creatively argues that, even though he admittedly used his judgment, it was not "legal" judgment and therefore does not bear on whether he was practicing law. Opp. at 13. The applicable legal ethics authority makes clear, however, that when a trained lawyer exercises his or her judgment in a legal field, that judgment is legal judgment constituting the practice of law. For example, the ABA has stated that "'[i]t is difficult to conceive how a lawyer should conduct a claims adjustment bureau, a company for the organization of corporations, or a bureau for securing income tax refunds, without practicing law.'" *See* Ex. FF, at p.2 (ABA Comm. on Ethics and Prof'l Responsibility, Formal Opinion 328 (1972) (quoting Opinion 57 (1932))); *see also* Ex. GG, at *2 (N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Opinion 557 (1984)) (when services that could be performed by a non-lawyer "are performed by a lawyer who holds himself out as a lawyer, they constitute the practice of law"). As a lawyer exercising judgment when assessing documents for privilege, responsiveness and confidentiality in connection with a pending litigation, there is no question that Mr. Henig was exercising legal judgment and was engaged in the practice of law.

7

### B. The Fact That Mr. Henig's Work Was Supervised and/or Re-Reviewed by Others Does Not Render His Position Non-Exempt

Having conceded that he exercised his legal knowledge and judgment in his role as a First Level Review attorney, Mr. Henig next attempts to insert an additional requirement that an attorney exercise "independent" legal judgment to be engaged of the practice of law. Opp. at 17-18. Mr. Henig appears to be suggesting that supervision and/or subsequent review of their work by others negates the First Level Reviewers' use of their own legal judgment.

The law is clear that mere supervision and double-checking of junior-level exempt employees' work does not alter the exempt status of their position. Although Mr. Henig attempts to distinguish the Second Circuit decision in *Pippins v. KPMG*, Opp. at 16-17, this case provides useful guidance on this point. As the District Court noted in *Pippins*, the regulations themselves "make it clear that supervision of an employee, or review of an employee's work or decisions at a higher level, does not preclude the exercise of discretion and judgment." *Pippins v. KPMG LLP*, 921 F. Supp. 2d 26, 53 (S.D.N.Y. 2012), *aff'd.*, 759 F.3d 235 (2d Cir. 2014).

Moreover, even if independent judgment without supervision were a necessary consideration, which it is not, such independent judgment was in fact part of the First Level Reviewers' responsibilities. It is undisputed that Mr. Henig tagged more than 2,500 documents nonresponsive. PCS ¶ 108. It is further undisputed that non-responsive documents were segregated and withheld from production without further review, and that only a random sample was subsequently reviewed for quality control. PCS ¶ 127. Mr. Henig thus has admitted that he was responsible for making the final determination that these documents could properly be withheld from production, without any additional supervision or subsequent review.

Finally, Mr. Henig cannot base his argument that he was not engaged in the practice of law on his allegation that two of the many Quinn Emanuel Second-Level Reviewers who

8

reviewed his work were awaiting admission to the Bar. Opp. at 18; PCS ¶¶ 162-165. Non-admitted new associates are fully allowed to perform certain legal work, provided that they do so under the supervision and direction of lawyers. *See* Ex. HH (N.Y. Cnty. Lawyers Assoc. Comm. on Prof'l Ethics, Opinion 682 (1990)). To the extent that a tiny number of the Second Level Reviewers had not yet been admitted to the Bar, their work was appropriately directed and supervised by the more senior associates and Quinn Emanuel partners who were managing the Document Review Project. Plaintiff has no authority for his argument that supervision by non-admitted lawyers somehow rendered his exercise of his own legal judgment "not the practice of law."

### C. Mr. Henig's Time Sheet Entries and Billable Rate Do Not Alter the Fact that He Was Engaged in the Practice of Law

The Court should disregard as irrelevant Mr. Henig's conclusory assertion that "Quinn Emanuel did not expect him to exercise legal judgment . . . .[because] Quinn Emanuel used the same description for Plaintiff's work in every relevant time entry in its client invoices." Opp. at 19. It is undisputed that Mr. Henig's time entries consistently stated that he "[p]erformed first level review of documents . . . for responsiveness and initial identification of potentially privileged documents for further review." *Id.* (ellipsis in original). But the fact that Mr. Henig's document review duties for the mere two months that he worked on the project were consistently described with the same language for purposes of billing has absolutely zero to do with whether that review required legal judgment consistent with the practice of law. In fact, Quinn Emanuel's bills support the conclusion that Mr. Henig was engaged in the practice of law because it is undisputed that he was identified on the bills as an "Attorney." PCS ¶ 31.

Similarly, the fact that Quinn Emanuel billed its client only $68.50 per hour for the services of Mr. Henig and the other First Level Review attorneys contracted through Providus—

9

which was less then it billed for Quinn Emanuel employees—is completely irrelevant to whether they were engaged in the practice of law.  As is common in complex civil litigation, Quinn Emanuel's client elected to have lower priced agency attorneys conduct the first level document review.  Notably, Mr. Henig admits that he applied for the document review job knowing that it paid $35.00 per hour, that "being a lawyer was a 'prerequisite' and that 'only licensed attorneys [could] apply.'"  PCS ¶¶ 6, 15 (citing Henig Dep. Tr. at 24:18-25:3).  If a rate of $68.50 was somehow probative of a non-legal job, then there would have been no reason for Mr. Henig to be willing to take a position limited to licensed attorneys that would pay him only slightly more than half of that amount.

### III.   CONCLUSION

For all of the reasons set forth above and in Quinn Emanuel's Memorandum and Rule 56.1 Statement of Facts, Quinn Emanuel respectfully requests that the Court grant summary judgment in its favor.

DATED: New York, New York
          October 8, 2015

                              Respectfully submitted,

                              QUINN EMANUEL URQUHART &
                              SULLIVAN, LLP

                              By  /s/ Marc L. Greenwald
                                Peter E. Calamari
                                (petercalamari@quinnemanuel.com)
                                Marc L. Greenwald
                                (marcgreenwald@quinnemanuel.com)
                                Elinor C. Sutton
                                (elinorsutton@quinnemanuel.com)
                                Samuel C. Kitchens
                                (samuelkitchens@quinnemanuel.com)

                                51 Madison Avenue, 22nd Floor
                                New York, New York 10010
                                (212) 849-7000

                                *Attorneys for Defendant Quinn Emanuel*
                                *Urquhart & Sullivan, LLP*