# Exhibit H

**REDACTED**

```
                                                    Page 1
 1
     UNITED STATES DISTRICT COURT
 2   SOUTHERN DISTRICT OF NEW YORK
     Civil Case No. 13 CV 1432
 3   - - - - - - - - - - - - - - - - - - - - - x
 4   WILLIAM HENIG, on behalf of himself and all
     others similarly situated,
 5
                         Plaintiff,
 6
               - against -
 7
     QUINN EMANUEL URQUHART & SULLIVAN, LLC and
 8   PROVIDUS NEW YORK, LLC,
 9                       Defendants.
     - - - - - - - - - - - - - - - - - - - - - x
10
11                       233 Broadway
                         New York, New York
12
                         September 4, 2014
13                       10:09 a.m.
14
15        PRIVILEGED - CONFIDENTIAL
16        SUBJECT PROTECTIVE ORDER
17
18             DEPOSITION of KEN TANZER,
19   held at the above time and place, taken
20   before Brittany Saline, a Notary Public of
21   the State of New York, pursuant to the
22   Federal Rules of Civil Procedure.
23
24
25
```

Page 6

1    K. TANZER - PRIVILEGED - CONFIDENTIAL
2         know.  Just please do not take a break
3         when there is a question pending; is
4         that okay?
5                 THE WITNESS:  Yes.
6                 MR. KIRSCHENBAUM:  You can
7         talk to your lawyer at any time as
8         long as there is no question pending;
9         is that understood?
10                THE WITNESS:  Yes.
11                MR. KIRSCHENBAUM:  During the
12        deposition, your attorney might object
13        to some of my questions.  Unless he
14        specifically instructs you not to
15        answer, you can answer my question;
16        understood?
17                THE WITNESS:  Yes.
18        Q     Are you currently taking any
19   medications that may impair your ability to
20   testify truthfully today?
21        A     No.
22        Q     Is there any other reason why
23   your memory might be impaired today?
24        A     No.
25        Q     Do you currently work at Quinn

```
                                              Page 7
 1      K. TANZER - PRIVILEGED - CONFIDENTIAL
 2   Emanuel?
 3          A       Yes.
 4          Q       What is your job title?
 5          A       Contract attorney.
 6          Q       How long have you been
 7   employed as a contract attorney at Quinn
 8   Emanuel?
 9          A       There is a break in the
10   timing, I started out there must have been
11   early 2007, I was there for about a half
12   year and then I left and then I came back
13   somewhere between three or four years ago.
14          Q       So you came back between 2010
15   and 2011?
16          A       Around there, yes.
17          Q       And when you started in 2007,
18   how long did that last?
19          A       It was six months, seven
20   months.
21          Q       Where did you work in between
22   that and your second employment at Quinn
23   Emmanuel?
24          A       I worked at Kavanagh, Maloney,
25   Osnato.
```

```
                                             Page 8
1     K. TANZER - PRIVILEGED - CONFIDENTIAL
2       Q      Was your contract position at
3  Quinn Emmanuel your first job out of law
4  school?
5       A      Yes.
6       Q      When did you graduate law
7  school?
8       A      2006.
9       Q      And are you admitted to the
10 New York State bar?
11      A      Yes.
12      Q      When were you admitted to the
13 New York State bar?
14             MR. KITCHENS:  Objection.
15      A      Soon after graduation, I think
16 2007 was the year.
17      Q      Before you started your
18 contract position at Quinn Emmanuel?
19             MR. KITCHENS:  Objection.
20      A      No.
21      Q      Your first position at Quinn
22 Emanuel in early 2007, was that a document
23 review project?
24             MR. KITCHENS:  Objection.
25      A      A document review was part of
```

Page 9

1  K. TANZER - PRIVILEGED - CONFIDENTIAL
2  it, yes.
3      Q      What were the other parts of
4  it?
5           MR. KITCHENS:  Objection.
6      A      It was mainly document review,
7  but it was -- I was the only contract
8  attorney on the matter, so I was kind of
9  involved throughout.
10     Q      Okay.  Are you currently
11 employed as a second-level reviewer?
12     A      Currently working as a
13 privilege log reviewer the case I am
14 working on now.
15     Q      Okay.  And you're familiar
16 with William Henig?
17     A      I believe I interviewed him.
18     Q      Okay.  You know that he was
19 employed as a document reviewer at Quinn
20 Emanuel for roughly, I would say, a month
21 or two in the year of 2012?
22     A      Yes, I believe he was
23 employed, he was working on a Quinn matter
24 through an agency.
25     Q      Right.

Page 12

1    K. TANZER - PRIVILEGED - CONFIDENTIAL
2    of individuals and say these people are
3    coming in, please interview them?
4         A     I was emailed a list of
5    individuals, time frames and they attached
6    their resumes.
7         Q     And this list was emailed to
8    you by Todd Riegler?
9              MR. KITCHENS:  Objection.
10        A     I believe so, yes.
11        Q     As far as you know, are you
12   the only individual at Quinn Emanuel to
13   interview Mr. Henig?
14             MR. KITCHENS:  Objection.
15        A     I couldn't -- I have no idea.
16        Q     Mr. Riegler asked you to
17   interview Mr. Henig, did he give you any
18   specifics as to what you were supposed to
19   be looking for during this interview?
20        A     Not specifically that
21   interview.  Generally speaking, when it
22   came to interviewing the candidates, we
23   were told to -- there was a few things he
24   wanted noted in our reply email where we
25   evaluated the candidates and he wanted to

Page 13

1  K. TANZER - PRIVILEGED - CONFIDENTIAL
2  know what state they were admitted to for
3  bar admittance and what year.  He wanted to
4  know -- he had a ranking system where we
5  would say -- you know, it was a number
6  system, I think it was maybe 1 through 3 or
7  1 through 4, where it was definitely hire,
8  strong approval, approval, and then
9  question and why, like a No. 3 would need a
10 why and 4 was do not approve.
11       Q       So 1 would be definitely hire?
12       A       Yes.
13       Q       And 2?
14       A       That was still like hire.
15       Q       Hire?
16       A       Yes.
17       Q       Just not definitely?
18       A       One was strong approval, 2 was
19 approval, 3 was --
20       Q       Question mark?
21       A       -- do not approve and give a
22 short reason why, and 4 was strong
23 disapproval.  I believe, that was a while
24 ago, I haven't seen the email.
25       Q       Is it your understanding that

Page 14

1  K. TANZER - PRIVILEGED - CONFIDENTIAL
2  your recommendation of this regard was
3  generally followed?
4              MR. KITCHENS:  Objection.
5       A      Excuse me, can you please
6  repeat?
7       Q      Sure.  Is it your
8  understanding that your recommendation in
9  this regard was generally followed by Quinn
10 Emanuel?
11      A      I do not know what they did,
12 it was not my hands to say definitely this
13 or that, it just went to them and then the
14 process went on without my knowledge.
15      Q      Of the seven people you
16 interviewed, did you give any of those
17 individuals a 3 recommendation?
18      A      First of all, I am not sure if
19 it was exactly seven, that was a general
20 ballpark recollection I had it, could have
21 been five it, could have been eight.
22      Q      Okay.
23      A      And I believe I gave maybe
24 one, I definitely gave one person a 1 and I
25 believe the rest were 2.

Page 15

1   K. TANZER - PRIVILEGED - CONFIDENTIAL
2                MR. KITCHENS:  Objection.
3        Q       Did those people subsequently
4   get hired for the job to your knowledge?
5        A       I know that I had seen three
6   of them subsequently.
7        Q       Okay.  Do you remember what
8   number you gave Mr. Henig?
9        A       I do not -- well, actually I
10  do.  I think I gave everyone 1s or 2s and I
11  know who I gave a 1 to, so I believe I gave
12  him a 2.
13       Q       You would send these numbers
14  in a report to Mr. Riegler?
15       A       It was just an email with, you
16  know, the bar admittance, the number, not
17  sure if we included what law school, that
18  might have been another thing we added, I
19  am not sure, and our recommendation number,
20  it's a while ago, I can't recollect
21  everything that was in that email.
22       Q       Would you have sent that email
23  from a Quinn Emmanuel email address?
24       A       Yes.
25       Q       Do you know if you searched

Page 16

K. TANZER - PRIVILEGED - CONFIDENTIAL

1  
2  your Quinn Emmanuel address to find a copy
3  of that email?
4      A     Do I know -- excuse me?
5           MR. KITCHENS:  Objection.
6      Q     Have you looked through your
7  email for a copy of the email you sent to
8  Todd Riegler for your recommendation to
9  Mr. Henig?
10     A     No.
11          MR. KIRSCHENBAUM:  Obviously
12    we're going to request it.
13          MR. KITCHENS:  Okay.  We can
14    discuss at the end of the deposition.
15          MR. KIRSCHENBAUM:  Okay.  Do
16    you have something you want?
17          MR. KITCHENS:  No, we can just
18    talk after.
19          MR. KIRSCHENBAUM:  We're going
20    to request that Quinn Emmanuel produce
21    that email.
22          MR. KITCHENS:  We can discuss
23    at the end.
24     Q     What criteria did you consider
25 when ranking an interviewee?

Page 17

1    K. TANZER - PRIVILEGED - CONFIDENTIAL
2        A       Sure, well, we had the resume
3    so we know what law school they went to.
4    And then when I look at the resume I try to
5    get -- things that we look for would be
6    some experience for the document review.
7    None of these things were also, if they
8    didn't have it, you wouldn't hire, if they
9    did have it, you definitely hire.  But some
10   of the things that factor in would be where
11   they went to law school, if they had
12   document review experience and if there is
13   anything in their background that was
14   finance-related, but then -- so I would
15   look at that to get a feel for what a
16   candidate's strengths or weaknesses might
17   be and when I interview them, you know,
18   let's say a weakness is that they didn't
19   have document review experience, you kind
20   of discuss the document review process and
21   get a feel for their understanding of what
22   you're explaining and comfort level with
23   it.  And, you know, someone didn't have,
24   you know, financial background, I would ask
25   them if they had a general understanding of

```
                                              Page 18
 1     K. TANZER - PRIVILEGED - CONFIDENTIAL
 2    the ███████████████ process or about, you
 3    know, just what was in the news about the
 4    ████████████████  ██████████, collapse market
 5    issues.  And if they had a feel for that,
 6    that would weigh in their favor, and those
 7    are the things -- so you would look for
 8    what the resume didn't have and get a sense
 9    of their strengths with that.
10              Just generally, too, you know,
11    since you work in large groups and this and
12    there is a lot of interaction and
13    discussing of what we're seeing, you get a
14    feel for how communicative they are and how
15    well, you know, they can work in groups.
16       Q     Do you remember if Mr. Henig
17    had any document review experience before
18    interviewing with you?
19       A     No, I don't remember.
20       Q     Do you remember if he had any
21    financial background before the interview
22    with you?
23       A     Honestly, I don't remember any
24    of the details of the interview or his
25    resume.
```