# Exhibit Z

**REDACTED**

```
                                                        Page 1
 1
 2   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 3   Civil Case No. 13 CV 1432
     - - - - - - - - - - - - - - - - - - - -x
 4   WILLIAM HENIG, on behalf of himself and
     all others similarly situated,
 5
                         Plaintiff,
 6
             -against-
 7

     QUINN EMANUEL URQUHART & SULLIVAN, LLP,
 8   and PROVIDUS NEW YORK, LLC,
 9                       Defendants.
10   - - - - - - - - - - - - - - - - - - - -x
11                       233 Broadway
                         New York, New York
12                       July 18, 2014
                         10:10 a.m.
13
14         PRIVILEGED - CONFIDENTIAL
15         SUBJECT PROTECTIVE ORDER
16
17      DEPOSITION of MICHAEL BELGRAIER, a
18   witness appearing on behalf of the
19   Defendants in the above-entitled action,
20   held at the above time and place, taken
21   before Brian Brenner, a Shorthand Reporter
22   and Notary Public of the State of New
23   York, pursuant to the Federal Rules of
24   Civil Procedure, Court Order and
25   stipulations between Counsel.
```

```
                                                        Page 45
 1    M. BELGRAIER - PRIVILEGED - CONFIDENTIAL
 2         Q       You are not sure?
 3         A       Exactly.
 4         Q       What is ████████████'s e-mail
 5    about?
 6                 MR. KITCHENS:   Objection.
 7         A       It is in regards to the players
 8    list.
 9         Q       What's the players list?
10         A       A list of names of people
11    associated with the ██████ case.
12         Q       Was it something you used in
13    conducting the second-level review?
14         A       Yes.
15         Q       How did you use it?
16         A       It was more just a way to assist
17    us when we performed our analysis to know
18    who the person is, who they work for,
19    their role at the company, the bank, just
20    to provide more color on what we were
21    looking at.
22         Q       And updates to the players list
23    were sent out periodically?
24         A       Yes.
25                 MS. SCHULMAN:   Mark this as
```

```
 1    M. BELGRAIER - PRIVILEGED - CONFIDENTIAL
 2       Exhibit 5.
 3            [Whereupon, the above-mentioned
 4       document was marked Plaintiff's MB
 5       Exhibit 5 for identification.]
 6       Q    I'm showing you what has been
 7   marked as MB Exhibit 5, Bates stamps
 8   QE00211421 through 211543 (handing).
 9            Is this an example of the
10   players list?
11            [Witness peruses the document.]
12       A    Yes.
13       Q    If you look at the footer on the
14   first page, it says updated 9/6/12.  Does
15   that mean that the player's list with went
16   with ███████████ s September 7, 2012
17   e-mail?
18            MR. KITCHENS:  Objection.
19       A    I don't know if it is.
20       Q    Do you see in the subject line
21   of her e-mail at the end it says updated
22   9/6/12?
23       A    Yes.
24       Q    So do you believe that this is
25   the players list that went with that
```

1    M. BELGRAIER - PRIVILEGED - CONFIDENTIAL
2    e-mail?
3        A    Likely.
4        Q    The players list was an Excel
5    spreadsheet?
6        A    Yes.
7        Q    And it has multiple worksheets
8    in it?
9        A    Tabs?
10       Q    Yes.
11       A    Yes.
12       Q    The footer on the first page
13   says ████ players terms ████ custodian.  Do
14   you see that?
15       A    Um-hmm, yes.
16       Q    What are the ████ --
17            MS. SCHULMAN:   Strike that.
18       Q    I believe that the bottom line
19   actually has the tag name on it.  It says
20   all players by name.  Do you see that?
21       A    I see that.
22       Q    Do you know what that is?
23       A    I'm not sure I'm following your
24   question.
25       Q    Are you familiar with that tab?

```
                                                   Page 48

 1   M. BELGRAIER - PRIVILEGED - CONFIDENTIAL
 2       A     Yes.
 3       Q     Who are the people on that tab?
 4       A     It's a collection of every name
 5   that we have come across that are
 6   associated with the █████ case.
 7       Q     What do you mean by associated
 8   with?
 9       A     They either worked for one of
10   the ████████ Plaintiff or the Defendants.
11   Mostly the Plaintiffs, I believe, in this
12   case.
13       Q     How would you use that
14   information in your review?
15       A     Again, just when performing your
16   analysis and you need a better
17   understanding of who sends you an e-mail
18   or who someone's talking about, this list
19   can help provide color.
20       Q     And would that help you
21   determine whether a document was
22   responsive or not?
23       A     It doesn't necessarily help to
24   determine the responsiveness nature of the
25   document.  It just provide color and
```

```
 1    M. BELGRAIER - PRIVILEGED - CONFIDENTIAL
 2   context of the document.
 3        Q     Would it help you determine if
 4   the document was privileged?
 5        A     It could provide some help in
 6   making that determination, but it does not
 7   necessarily determine the privileged
 8   nature of the document.
 9        Q     How would it help?
10        A     If you could see that it has an
11   attorney's name, you could have a sort of
12   antenna up to determine whether or not it
13   is privileged, but you still need to
14   perform the privilege analysis.
15        Q     Tell me, how long would it take
16   you to analyze a document for
17   responsiveness?
18        A     Generally a minute to two
19   minutes.
20        Q     And what do you do in that
21   analysis?
22        A     You read the entire document.
23   You digest the document, get an
24   understanding of what the document is, and
25   you analyze it using the RFPs to determine
```

```
                                                    Page 64
```

1  M. BELGRAIER - PRIVILEGED - CONFIDENTIAL
2  definition of the unauthorized practice of
3  law?
4           MR. KITCHENS:   Objection.
5      Q    You can answer.
6      A    To perform legal work without
7  the appropriate licensing.
8      Q    Mr. Belgraier, do you believe
9  you were engaged in the unauthorized
10 practice of law when you were working on
11 the ███ practice prior to being an
12 licensed attorney?
13          MR. KITCHENS:   Objection.
14     A    No, I don't.
15     Q    Why not?
16     A    It's my understanding that one
17 who's not admitted is performing legal
18 work under the supervision of licensed
19 attorneys.
20     Q    And you were supervised by
21 licensed attorneys?
22     A    Yes.
23     Q    Were all of your coding
24 decisions reviewed by licensed attorneys?
25          MR. KITCHENS:   Objection.

1  M. BELGRAIER - PRIVILEGED - CONFIDENTIAL
2  highlighted terms or key terms to
3  determine the responsiveness or privileged
4  nature of a document, you would have
5  reported that because you believed that
6  they were not fulfilling their duties?
7      A    Correct.
8      Q    Would it be acceptable for a
9  second-level reviewer to only use
10 highlighted terms or key terms to review
11 documents?
12     A    No.
13     Q    Would it be acceptable for any
14 level of reviewers to only use highlighted
15 terms or key terms to review documents for
16 their responsiveness or privileged nature?
17          MS. SCHULMAN:    Objection.
18     A    No.
19     Q    At all times when you've been
20 working on the ▮▮▮▮ project,
21 Mr. Belgraier, have you been supervised by
22 licensed attorneys?
23     A    Yes.
24     Q    And do you recall who directly
25 supervised you?

Page 75

1  M. BELGRAIER - PRIVILEGED - CONFIDENTIAL
2       A       Andrew Kutscher, Tobey Futter,
3  and Todd Reigler.
4       Q       Are all three of those
5  individuals licensed attorneys?
6       A       Yes.
7       Q       When you had a question
8  regarding a document review, did you
9  always direct it to a licensed attorney?
10      A       Yes.
11      Q       Did you --
12              MS. SUTTON:   Strike that.
13      Q       When you exercised your judgment
14 in reviewing documents were you doing that
15 under the supervision of a licensed
16 attorney?
17              MS. SCHULMAN:   Objection.
18      A       Yes.
19      Q       Did licensed attorneys train you
20 in how to make responsive and privilege
21 calls on the documents?
22      A       Yes.
23      Q       And did you always understand
24 yourself to be making judgment calls with
25 regard to these documents under the