# Exhibit EE

NEW YORK STATE BAR ASSOCIATION
Committee on Professional Ethics

| | | |
|---|---|---|
| Opinion 721 – 9/27/99 | Topic: | Insurance carrier; third party research; unauthorized practice by lawyers not admitted in New York; confidences and secrets (briefs and memos prepared for client). |
| | Digest: | Defense counsel may follow the direction of an insurance carrier to utilize a specified legal research service as long as the lawyer reviews the work of the service and use of the service does not diminish the effective representation of the client. The fact that the service uses non-lawyers or lawyers not admitted in New York does not cause defense counsel to be aiding in the unauthorized practice of law, as long as defense counsel supervises or reviews the work of the research firm. Defense counsel may provide copies of research memoranda, briefs and other documents prepared for the client if they do not contain confidences or secrets of the client or if the client gives informed consent. |
| | Code: | DR 2-110, 3?101 (A)?(B), 3?103, 4?101(A)?(D), 5?101(A), 5?105 (C), 5?107(A), 5?107(B), 5-108(A), (B), 6-101, 6-101(A)(2), 7-101(A)(1), 7?102 (A)(8), 7?105 (B); EC 2?22, 3?5, 3?9, 4?4, 5?1, 7-7. |

## FACTS

An insurance carrier provides counsel to defend its insured in a matter and is required to pay the reasonable costs of the defense. The insurance carrier provides guidelines to defense counsel on what constitutes "reasonable" costs. One such guideline states that the carrier will not pay for any research time spent by defense counsel unless counsel first utilizes the services of an outside legal research firm, which maintains a research/brief bank consisting of expert deposition transcripts, motions, trial and appellate briefs, and memoranda, and has a staff of research specialists. The

purpose of the research/brief bank is to reduce costs and to help the lawyer analyze issues.

The legal research firm does all of its work for lawyers. It does not have an independent relationship with the insureds. Legal research is conducted by attorneys who are admitted to practice in different jurisdictions, some of whom may not be admitted in New York, and by non-lawyers. Non-legal research is conducted by "information specialists" with training and experience in fee-based library services. The research firm bills for its services on an hourly basis, with rates based on requested turnaround time. The research firm warns the defense lawyer to review and confirm the validity of all work performed by it. Neither the carrier nor the research firm indemnifies the lawyer for any errors in the research.

Different insurance company programs may have different requirements. Alternatives include: (1) The attorney must check the research/brief bank before doing any research. (2) The attorney (a) must use only research/briefs already contained in the research/brief bank; (b) may do additional work on a research memo/brief, but only with the consent of the insurer; or (c) may do additional work on the research memo/brief if the attorney believes such work is warranted, or is likely to increase the likelihood of the client's prevailing. (3) Where the research firm does not have a memorandum or brief on a particular subject, the defense attorney (a) may obtain lists of relevant authorities or complete research memos and briefs; (b) must have all research done by the research firm; (c) may do additional research, but only with the consent of the insurer; or (d) may do additional research if the attorney believes such work is warranted, or is likely to increase the likelihood of the client's prevailing.

To build up the legal research firm's research/brief bank, the carrier requires the defense attorney to submit briefs and memoranda that were prepared on behalf of clients insured by the carrier. Some carriers require attorneys to submit only those legal briefs and memoranda that meet certain time or length guidelines, *e.g.*, every brief, motion or research memorandum that is at least five pages long or took at least five hours of research to complete.

Neither the carrier nor the legal research service checks for conflicts of interest before performing the research.

## QUESTIONS

Question 1: May an insurance defense attorney accept an insurance company's direction to use a legal research service chosen by the insurance company before researching any issues related to the defense of the insured? If so, where the service does not have research on point, may the defense attorney accept the carrier's direction to use the legal research service to research legal issues?

Question 2: Does it matter that the work provided by the outside research firm is performed by non?lawyers and attorneys not admitted to practice in the State of New York?

Question 3: May an insurance defense attorney accept an insurance company's direction to submit legal memoranda and briefs prepared on behalf of the insured to a research/brief bank created by the insurer?

## OPINION

### 1. The Requirement to Use a Legal Research Firm

*Lawyer's Duty to Exercise Independent Professional Judgment; Limitations on Scope of Representation.*

DR 5-107(A) of the Code of Professional Responsibility prohibits a lawyer from being paid by an insurance carrier to represent the insured, without the consent of the insured. Despite the fact

that an insurance company has retained the lawyer pursuant to its contractual duty to defend the policyholder, the client is the policyholder, not the insurance company. *See* N.Y. State 716 (1999); ABA Inf. Opin. 1476; *American Employers Insurance Co. v. Goble Aircraft Specialties, Inc.*, 205 Misc. 1066, 131 N.Y.S.2d 393 (1954) (hereinafter "*Goble*").  The Code generally requires a lawyer to exercise independent professional judgment on behalf of his or her client. Canon 5.  More specifically, DR 5?107(B) makes clear that this obligation continues even when the lawyer's fee is being paid by a third person:

A lawyer shall not permit a person who recommends, employs or pays the lawyer to render legal service for another to direct or regulate his or her professional judgment in rendering such legal services.

Under DR 5-107(B), a lawyer may not allow the insurance company, by virtue of paying the lawyer's fee, to direct or regulate the lawyer's professional judgment.

We have held that a lawyer may agree with a client to limit the scope of the lawyer's services in certain circumstances, for example, because the client has limited funds or because the client has other good reason for foregoing work that the lawyer might otherwise do.  N.Y. State 713 (1999),  N.Y. State 604 (1989).  The first requirement of any such agreement is that the reduced scope of employment must comply with the lawyer's obligation under Canon 6 and DR 6-101 to provide competent representation to the client.  In addition, the lawyer may not intentionally fail to seek the lawful objectives of the client, as determined by the client.  *See* DR 7-101(A)(1), EC 7-7.  Consistent with these limitations, the lawyer and client may agree to a reasonable limitation on the legal research to be performed by the lawyer.

The insurance contract between the insurance company and the insured often gives the insurer a limited right to participate in the insured's defense.  The consent of the insured to such participation does not entitle the carrier to impose conditions that would lead to inadequate representation or constrain the lawyer's independent professional judgment on behalf of the client:

[The lawyer's] fealty [to the insured] embraces the requirement to produce in court all witnesses, fact and expert, who are available and necessary for the proper protection of the rights of his client.  It is immaterial that such procedure increases the cost to the carrier beyond the policy coverage limit. *Goble*, *supra*.

Nevertheless, the insured may authorize the insurance carrier to place the same reasonable limitations on the representation as could the insured, subject to the limitations contained in DR 5?107(B).  *See* N.Y. State 705 (1998) (defense lawyer may retain expert witness recommended by third party payor of legal fees).  We believe that includes imposing a reasonable budget for legal research, provided that the research limitation does not compromise the effectiveness of the representation. *See* American Law Institute, Restatement Third, Restatement of the Law Governing Lawyers (hereinafter "Restatement"), Section 215, comment d (restrictions placed on the representation by one other than the client must allow for effective representation and must be reasonable in scope, such as adherence to a reasonable budget.).[1]

*Acceding to Carrier's Instruction to Use Named Legal Research Firm*

We see no ethical impropriety if, with the client's informed consent as discussed below, a lawyer accedes to the carrier's request to consult a research/brief bank for relevant legal authority before doing any research, as long as, before using the research, the lawyer conducts an adequate review of the research provided by the firm and is reasonably satisfied that it is complete and correct.  Using the services of a competent research firm may save the time and reduce the costs of the lawyer.  Similar considerations apply when the insurance carrier requires that the lawyer hire the

legal research firm to do original research when the firm has no existing memoranda on a subject.

A requirement that the lawyer do no additional research or writing of memoranda or briefs without the consent of the insurance company is appropriate only if the lawyer concludes in the exercise of independent professional judgment that, on the particular occasion, no such additional work is necessary to the effective representation of the client.  If, however, the attorney believes that further research/briefs are necessary, and that use of the material provided by the research firm would result in inadequate representation, the attorney may not agree to such a limitation.  DR 6?101(A)(2) (prohibiting a lawyer from handling a legal matter without preparation adequate in the circumstances.). Of course, if a law firm retained by an insured handles a case without adequate preparation or research, the "insured is not otherwise left without a remedy for a law firm's claimed incompetence, and a law firm is not insulated from liability for wrongdoing." *Feliberty v. Damon*, 72 N.Y.2d 112, 120, 531 N.Y.S.2d 778, 527 N.E.2d 261 (1988) (citing DR 5?107[B]).

The interests of both the insurer and insured are often the same ?? to defeat the plaintiff's claim.  ABA Formal Opin. 282 (usually, "the company and the insured are virtually one in their common interest... ").  However, where the lawyer believes that the interests of the carrier in cost-saving diverges from the interest of the defendant, the lawyer may not comply with directions given by the insurance company, at least without first discussing these directions with the insured and securing the insured's informed consent.

Where the insured is unwilling to grant consent to the insurance company, and the insurance company refuses to compensate the lawyer for representing the insured, the lawyer may either (i) withdraw insofar as permissible under DR 2?110; (ii) continue with the representation, perform the needed research, and risk the carrier's nonpayment of bills; or (iii) petition the court with jurisdiction over the matter to instruct the insurer to pay the reasonable costs of defending the matter.  *See, e.g.*, *Nelson Electrical Contracting Corp. v. Transcontinental Insurance Co.*, 231 A.D.2d 207, 660 N.Y.S.2d 220 (Third Dep't 1997) (to hold that counsel, having been employed for the purpose of safeguarding the interests of the insured, must nonetheless obtain the insurer's consent before pursuing a course of action tailored to serve that end, or risk a loss of coverage for "failure to cooperate," would be untenable).

*Duty to Provide Full Disclosure to the Client*.

In circumstances where an attorney receives compensation for legal services from one other than the client, DR 5?107(A)(1) requires the client's consent after full disclosure of all material facts and circumstances.  The attorney representing the insured should disclose the insurer's contractual rights under the insurance contract and should disclose any limitations or requirements that the insurance company imposes on the lawyer pursuant to the insurance contract or the insurer's policies.  *See* ABA Formal Opinion 96?403.  Moreover, "it is important that the lawyer fully disclose to the client the lawyer's relationship to the insurer, and at all times act in such a fashion that the insured has no basis to believe his interests are not fully and fairly represented." ABA Informal Op. 1402.

If the lawyer would have to disclose confidences and secrets of the client in connection with commissioning research or briefs, the attorney should tell the insured client what confidential client information the attorney will provide and obtain the client's consent. DR 4-101(B); *see* N.Y. State 718 (1999); N.Y. State 716 (1999); *see also* EC 4-2 (In the absence of consent of the client after full disclosure, a lawyer should not associate another lawyer in the handling of a matter, nor should the lawyer, in the absence of consent, seek counsel from another lawyer if there is a reasonable possibility that the identity of the client or confidences or secrets would be revealed to such lawyer).

The lawyer should discuss with the insured any limitations placed by the carrier on research, motions or briefs, and the lawyer's opinion of whether such limitations are likely to have a material adverse effect on the outcome of the representation and obtain the consent of the client.  If the client does not consent, the lawyer must choose between the options set forth in the previous section.

## 2. Research Performed by Persons not Admitted to Practice in New York

Lawyers use a variety of methods to do legal research, including doing it themselves, performing computer-assisted research, hiring associates or legal assistants, and hiring outside research services.  An outside research service may be staffed by lawyers or by non-lawyer personnel.  Lawyers who are not admitted to practice in New York have the status of non-lawyers in New York.  N.Y. County 682 (1990).

EC 3-6 recognizes the benefits that can accrue when lawyers use non-lawyer assistants:

A lawyer often delegates tasks to clerks, secretaries, and other lay persons.  Such delegation is proper if the lawyer maintains a direct relationship with the client, supervises the delegated work, and has complete professional responsibility for the work product.  This delegation enables a lawyer to render legal service more economically and efficiently.

*See also* N.Y. State 677 (1995), ABA Formal Opin. 316 (1967).  In N.Y. State 677, this Committee stated that whether a task may be given to a non-lawyer depends fundamentally on whether the task constitutes the practice of law, which, in turn, depends upon whether the task is merely ministerial or whether it involves the exercise professional legal judgment.   That opinion involved whether a legal assistant may attend a real estate closing.  It did not address the issue of whether performing legal research constitutes the practice of law.  Nevertheless, other ethics committees in New York have determined that non-lawyers may research questions of law and draft documents of all kinds, including process, affidavits, pleadings, briefs and other legal papers as long as the work is performed *under the supervision* of an admitted lawyer.  N.Y. County 682 (1990).  *See also* N.Y. City 1995-11, N.Y. City 884 (1974).  In N.Y. State 677, we determined that proper supervision involves considering in advance the work that will be done and reviewing after the fact what in fact occurred, assuring its soundness.

If the insurance carrier were to instruct the lawyer not to provide adequate supervision of the work of the legal research firm, the lawyer could not agree to such a restriction.  Without the supervision of a New York lawyer, the legal research firm would be deemed to be engaged in the unauthorized practice of law in New York. DR 3-101(B).  *See* N.Y. State 662,  N.Y. State 355, EC 3?5 (relating the general body of law to a specific legal problem constitutes the practice of law) and EC 3?9 (authority to engage in the practice of law conferred in any jurisdiction is not per se a grant of the right to practice elsewhere). Sections 479 and 495 of the Judiciary Law respectively forbid the practice of law by business corporations. DR 3?101 prohibits a lawyer from aiding a nonlawyer in the unauthorized practice of law.

## 3. Providing Client Materials to Research/Brief Bank Maintained by Insurer's Research Firm.

As noted above, when a lawyer defends a policyholder in civil litigation, despite the fact that an insurance company has retained the lawyer pursuant to its contractual duty to defend the policyholder, the client is the policyholder, not the insurance company. N.Y. State 716 (1999).  Consequently, all work product of the lawyer prepared in connection with the representation belongs to the client and may constitute confidences and secrets of the client.  Some U.S. jurisdictions have held that an insurance carrier and an insured are "co-clients" who have joint rights in the information concerning the representation.  *See* Wolfram, Modern Legal Ethics 430 (1986).  New York is not one of them.

A lawyer is responsible for maintaining the confidentiality of client information. *See* DR 4?101(A), EC 4?4. Moreover, DR 4?101 (D) provides:

A lawyer shall exercise reasonable care to prevent his or her employees, associates, and others whose services are utilized by the lawyer from disclosing or using confidences or secrets of a client, except that  a lawyer may reveal the information allowed by DR 4?101(C) through an employee.

Certain documents prepared by the lawyer may not constitute confidences and secrets of the insured. For example, briefs, motions and other documents that are filed in court are public documents and therefore do not meet the requirements of the attorney-client privilege (which depends on the information not being publicly disclosed). However, information that is known by persons other than the lawyer and client may still qualify as a secret. EC 4-4 (the ethical precept exists without regard to the fact that others share the knowledge). Although publicly filed documents technically may contain client "secrets," given their public availability their further dissemination may not be embarrassing or detrimental to the client. Documents filed in connection with litigation, such as depositions, are especially likely to contain client "secrets," while briefs and motions in many or most cases will not.

A memorandum that sets forth the facts of the client's matter will usually constitute confidences and secrets of the client - at least until the conclusion of the matter. On the other hand, a memorandum on a pure legal issue may or may not contain confidences and secrets. The issues being researched may or may not indicate the lawyer's judgment of the relevant issues. *Cf. Silver Chrysler Plymouth v. Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir. 1975) (former associate not disqualified where he did not become heavily involved in the facts of the matter and only entered briefly on the periphery for a limited purpose relating solely to legal questions).

If the defense lawyer is required to provide documents prepared for the client before the termination of the matter, then the absence of a conflicts check by the legal research firm may be relevant. A lawyer or agent of the lawyer may not disclose or use client information to the detriment of the client. DR 4-101(B). Thus, if it is possible that both plaintiff and defendant are clients of the insured, and thus could be given access to memos prepared by each other, the lawyer's acceding to the carrier's request to send materials to the memo/brief bank would violate Canon 4.

Does the insurance contract constitute consent to the disclosure of the client's confidences and secrets? As we stated in N.Y. State 716, it would not. The lawyer must therefore obtain the client's specific informed consent. Even if the client could be said to have agreed to cooperate with the carrier in the defense of the client's own matter, such consent would not extend to cooperating generally with the business of the insurer. *See* **New York State 485 (a legal aid lawyer may not ethically divulge confidences to a research organization without the client's consent after full disclosure within the meaning of DR 4?101[C][1]).** The protections afforded by DR 4?101 do not expire when an attorney?client relationship terminates.

## CONCLUSION

Defense counsel may follow the direction of an insurance carrier to utilize a specified legal research service as long as the lawyer reviews the work of the service and use of the service does not diminish the effective representation of the client. The fact that the service uses non-lawyers or lawyers not admitted in New York does not cause defense counsel to be aiding in the unauthorized practice of law, as long as defense counsel supervises or reviews the work of the research firm. Defense counsel may provide copies of research memoranda, briefs and other documents prepared for the client if they do not contain confidences or secrets of the client or if the client gives informed consent.

(12a-98)

---

[1]     Several bar association ethics committees have considered whether defense counsel may accede to various limitations placed on the representation by an insurance carrier. *See, e.g.*, Indiana Opin. 3 (1998)(disapproving the following provisions: curtailing reasonable discussions between members of the defense team on a day?to-day basis; dictation of the use of personnel within the lawyer's own office; requiring billing at the rate of an associate or paralegal if the carrier determines that a higher?paid lawyer was not necessary to the task; prohibiting the substitution of associates without the insurer's approval and requiring counsel to rely on legal research by an unsupervised paralegal); Alabama Opin. RO-98-02 (disapproving restrictions on discovery, use of experts, staffing and research time).